JOHN C. CARR & another *vs.* WILLIAM H. BURKE, JUNIOR, & another.

Suffolk.    November 10, 1955. — December 14, 1955.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Political Committee. Statute,* Construction. *Words,* "Provided."

The proviso in the second paragraph of G. L. (Ter. Ed.) c. 52, § 1, as appearing in St. 1950, c. 280, § 1, is a limitation on the power of the State committee of a political party to choose its permanent officers. [367]

An attempted election of a permanent chairman and a permanent secretary for full terms by the State committee of a political party at its organization meeting without first forming a temporary organization as required by the second paragraph of G. L. (Ter. Ed.) c. 52, § 1, as appearing in St. 1950, c. 280, § 1, was invalid and could not be ratified at a subsequent meeting of the committee.   [368]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on March 29, 1955.

The suit was reported by *Wilkins,* J., upon the pleadings and a master's report, such decree to be entered as justice and equity might require.

*James W. Kelleher,* for the plaintiffs.

*Michael T. Prendergast, (Joseph S. Ayoub* with him,) for the defendants.

QUA, C.J.   This is a bill in equity for a declaratory decree. In the present posture of the case the only live questions to be determined are whether the plaintiff John C. Carr legally holds the office of chairman of the Democratic State committee and whether the plaintiff Edward P. Gilgun legally holds the office of secretary of that committee.

The election of officers of State committees of political parties was governed by the second paragraph of G. L. (Ter. Ed.) c. 52, § 1, as appearing in St. 1950, c. 280, § 1. This paragraph read as follows: "The members of the state committee elected at the presidential primaries shall within

ten days after June first next following their election, meet
and organize by the choice of a chairman, a secretary, a
treasurer and such other officers as they may decide to
elect; provided, that the members of the committee shall
first meet and organize temporarily by the choice of a tem-
porary chairman and a temporary secretary who shall serve
until a permanent chairman and a permanent secretary are
chosen, and such committee, while temporarily organized or
at any time after its permanent organization, may add to
its membership."

The report of the master shows that at the first meeting
of the committee on June 7, 1952, an attempt was made to
elect Carr and Gilgun to their respective offices for the full
terms without any previous temporary organization.  No
one objected, "except that one member raised a general
question about whether the procedure followed the statute."

The first paragraph of c. 52, § 1, provided in substance
that the committee should consist of one man and one woman
from each senatorial district to be elected by the members
of the party at presidential primaries, to hold office for four
years from the first of June next following.  Presidential
primaries are held on the last Tuesday of April in any year
in which presidential electors are to be elected.    C. 53, § 28,
as most recently amended by St. 1946, c. 20, § 3.  This first
paragraph of c. 52, § 1, also made provision for the election
at the State convention[1] of such number of members at
large as might be fixed by the committee, to hold office
until the next convention, and for such number of members
as the committee might itself elect, to hold office for two
years, "provided, however, that in no event shall the terms
of office of such members extend beyond the term of office
of members who were elected at the presidential primaries."

It will be noted that the proviso at the end of the second
paragraph of c. 52, § 1, first above quoted relative to a tem-
porary organization of the committee introduced by the
words "provided, that" is conditional in form.  There can

---

[1] For State conventions see c. 53, § 54, as amended by St. 1941, c. 337,
§ 11, and see now St. 1953, c. 406, § 7, making numerous changes.

be no doubt that in ordinary usage such words denote a limitation upon, an exception to, or a requirement in addition to, that which has gone before. This is illustrated in many cases among which may be mentioned *Chapin* v. *Harris,* 8 Allen, 594, 596, *Considine* v. *Metropolitan Life Ins. Co.* 165 Mass. 462, 464–466, *Brennan* v. *Brennan,* 185 Mass. 560, *Old Colony Trust Co.* v. *Richardson,* 297 Mass. 147, 151–152, *Spaulding* v. *McConnell,* 307 Mass. 144, and *Sears* v. *Childs,* 309 Mass. 337, 345–346. In the leading case of *Attorney General* v. *Methuen,* 236 Mass. 564, where the effect of a proviso was fully considered, it was said on page 573 that the word provided "in common speech naturally expresses a qualification, a limitation, a condition, or an exception respecting the scope and operation of words previously used." There can be no doubt that the proviso in the first paragraph of this same § 1 is employed in that sense. We think that the proviso in the second paragraph is employed in the same sense and that it qualifies and limits the power of the committee to choose its officers.

There may be instances in which the context or the circumstances may point toward a construction of a proviso less strict than its wording, taken alone, would imply. But we do not find such circumstances here. The proviso requiring a temporary organization preceding the election of permanent officers first appeared in St. 1936, c. 99. The next previous statute was St. 1934, c. 288, § 1. That statute already contained a provision for the organization of State committees, but contained no proviso relative to temporary organization. There would seem to be no reason for inserting that proviso in the act of 1936 unless it was intended that it should be mandatory in accordance with its terms. It would be futile to insert such a proviso merely as a suggestion or as advice. A temporary organization was permissible under the earlier statute.

Where the Legislature has clearly expressed its intent, it is hardly our duty to search for reasons. But reasons may well exist. From its beginning in the act of 1936 this proviso has been coupled with a provision in the same section that

the committee may add new members during its period of temporary organization. One reason for the proviso may have been in order to afford opportunity for adding to the membership of the committee before the election of permanent officers. This might still be desirable even if since St. 1938, c. 346, § 1, the right to vote for permanent officers has been confined to members elected at presidential primaries. Another reason might be that a previous temporary organization would afford a better opportunity for deliberate consideration of the choice of permanent officers in orderly surroundings. The instant case may be an example in point. The plaintiff Gilgun, who had been secretary since 1944, started the meeting by calling the roll. Immediately thereafter and before any presiding officer had been chosen Gilgun suggested that nominations be made for chairman for the next four years. Thereupon the plaintiff Carr was nominated and his nomination was seconded. No other nominations were made. A member moved that one vote be cast "by the temporary secretary[1] to make the election unanimous." It "did not appear" whether this motion was seconded or whether it was formally voted upon, but the plaintiff Carr "thereupon accepted the nomination and proceeded without objection from any person present to act as chairman and to preside over the meeting," and has since acted as chairman. There is therefore doubt as to whether he was elected — doubt which might not have existed if there had been a temporary chairman to conduct the meeting.

We hold that the failure to form a temporary organization as required by § 1 before the voting for permanent officers rendered illegal the elections of the plaintiffs to their respective offices, even if they were otherwise properly elected, which we need not decide.

An attempt to ratify the elections made at a subsequent meeting of the committee could not supply the lack of a temporary organization required by the statute.

---

[1] It does not appear that any "temporary secretary" had been chosen.

A final decree is to be entered declaring that the plaintiffs do not hold the respective offices of chairman and secretary of the Democratic State committee.

*So ordered.*