WILLIAM C. MADDEN *vs.* SECRETARY OF THE COMMONWEALTH
& another.

Suffolk.   October 6, 1958. — October 14, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN,
WHITTEMORE, & CUTTER, JJ.

*Elections.   Mandamus.*

A mandamus proceeding could not be maintained attacking the validity
of a nomination for an elective State office if the certificate of nomina-
tion was "in apparent conformity with law" within G. L. c. 53, § 11,
and the petitioner had an effective remedy under that section.   [761]
A certificate which purported to be a nomination made under G. L. c. 53,
§ 14, of a candidate for the office of State senator in a specified sena-
torial district comprising more than one municipality by delegates
chosen by the ward and town committees of a political party in that
district to fill the vacancy caused by the withdrawal of the candidate
for that office nominated at the primary, and which was on a form
furnished by the Secretary of the Commonwealth, was signed by a
number of persons who severally made oath before a notary public
that the certificate was true, bore their candidate's written acceptance,
and was accepted as a nomination by the Secretary, sufficiently showed
that the delegates met and made the nomination and was "in apparent
conformity with law" within c. 53, § 11, although it failed to disclose
that it was signed and sworn to by the chairman and the secretary of
the meeting as such [763–764];   COUNIHAN, J., dissenting.
A purported certificate of a nomination made under G. L. c. 53, § 14, for
an elective State office to fill a vacancy by delegates chosen by the
ward and town committees of a political party in the election district
was not prevented from being "in apparent conformity with law"
within c. 53, § 11, by the alleged facts, not revealed on the face of the
certificate, that the secretaries of certain of the town committees had
not filed lists of membership with the Secretary of the Commonwealth
as required by c. 52, § 5, and that one of the town committees had not
notified the Secretary of the delegates chosen by it as required by c. 53,
§ 14.   [763]

PETITION for a writ of mandamus filed in the Supreme
Judicial Court for the county of Suffolk on September 26,
1958.

The case was reserved and reported by *Whittemore, J.*,
without decision.

*James W. Kelleher,* for the petitioner.

*Samuel W. Gaffer,* Assistant Attorney General, for the respondent.

*Charles B. Rugg, (Roger A. Moore & Robert D. Hartshorne, Jr.,* with him,) for the intervener.

WILKINS, C.J.   The petitioner, a resident and registered voter of the town of Lexington, is the Democratic candidate for the office of senator in the Seventh Middlesex Senatorial District.   By this petition for a writ of mandamus he seeks an order that the respondent Secretary of the Commonwealth print ballots for the forthcoming State election without the name of the intervening respondent, William E. Maloney, as the Republican candidate for that office.   The case is reserved and reported without decision.

The petition is assertedly brought to enforce the performance by the Secretary of a duty owed to the public in general,[1] and in support there are cited to us *Brewster* v. *Sherman,* 195 Mass. 222, and *Kaplan* v. *Bowker,* 333 Mass. 455, 460.   But there has been no case holding that a member of one political party has standing to enforce our election statutes in such a way as to challenge the action of members of another political party in making a party nomination. However that may be, we are stringently limited as to time and prefer to decide other issues.   Since the result will be the same, we shall assume, without so deciding, that the petitioner has such right.

The facts are admitted in the pleadings or have been agreed.   The Seventh Middlesex Senatorial District comprises four wards of the city of Lowell and nine towns. G. L. c. 57, § 3 (as amended through St. 1948, c. 250, § 2). In the primary on September 9, 1958, Charles Gibbons was nominated as the Republican candidate in this district, and also received the Republican nomination for Governor to replace an unopposed candidate for that office who had died. On September 10 Mr. Gibbons filed in the office of the Secre-

---

[1] In this case G. L. c. 54, § 41 (as amended through St. 1952, c. 128): "Ballots . . . shall contain the names of all candidates duly nominated . . . and . . . such ballots shall contain the name of no other person."

tary a withdrawal of his senatorial nomination.   On September 15 there was filed in the office of the Secretary a certificate purporting to nominate the respondent Maloney in place of Mr. Gibbons.

The questions before us relate entirely to the validity of that certificate, which was made upon a form furnished by the Secretary, a form which had been in existence for a number of years.   The certificate, which is dated at Lexington on September 12, recites:   "*Charles Gibbons* having withdrawn on the *tenth* day of *September 1958* as a candidate for the office of *State Senator, Seventh Middlesex District* under the political designation of *Republican,* We, a majority of the Ward and/or Town Committees in said district or the delegates chosen by same, hereby make the following nomination to fill the vacancy: — *William E. Maloney 289   Bedford St Lexington.*"   The italicized words were filled in on the form.   There follow fourteen or fifteen blank lines of the form bulging with the closely written signatures of seventy-four persons who severally made oath before a notary public that the certificate is true.   At the foot of the certificate is the written acceptance of the respondent Maloney.   There is no place designated on the form for the signatures of the chairman and secretary of the meeting as such, or any indication that it is to be signed solely by them.

The petition alleges that the certificate "is void on its face, is not in apparent conformity with law, and did not have the effect of nominating William E. Maloney for the office of senator in the 7th Middlesex District.   More particularly, the paper in question fails to comply with the requirements of G. L. c. 53, §§ 14 and 15."

An amendment to the petition alleges that "the only method provided by law by which the vacancy . . . could be filled is provided by G. L. c. 53, § 14, and requires in the case of a district composed of more than one municipality, the election of delegates by each ward and town committee in the district from its own members. . . .   [S]uch delegates were not properly elected, nor was the Secretary of State properly notified of their election forthwith, as required . . ..

Many of the persons whose signatures appear . . . are not members of any ward or town committee, as shown by the records on file with the Secretary of the Commonwealth, and, therefore, could not properly act as delegates."

A total of eighty-seven delegates could lawfully have been chosen to attend the meeting to fill the vacancy. Actually seventy-eight were chosen, and as to these reports of the selection of seventy-three are on file with the Secretary of the Commonwealth. There was no report as to the five delegates chosen by the town committee of Wilmington from its membership. On September 12 in Lexington there were present seventy-five persons purporting to act as delegates. These seventy-five persons include the seventy-four persons who signed and made oath to the certificate and one Donald A. Lawson, who was chairman of the meeting, but did not sign the certificate. One of the seventy-four, Marion D. Gould, served as secretary, although not so described on the certificate. The records of the meeting show that the respondent Maloney was nominated by acclamation.

It is an elementary principle that mandamus will not lie where there is available another and effective remedy. *Iannelle* v. *Fire Commr. of Boston,* 331 Mass. 250, 253. *Duncan* v. *School Comm. of Springfield,* 331 Mass. 738, 741–742. *Gavin* v. *Purdy,* 335 Mass. 236, 238. The respondents contend, and the petitioner denies, that the petitioner had such a remedy in filing objections with the State Secretary to be heard by the State ballot law commission. We quote from certain sections of G. L. c. 53, relating in part to "Nominations," which are the basis of this issue. "Objections to nominations for state offices, and all other questions relating thereto, shall be considered by the state ballot law commission . . .." G. L. c. 53, § 12 (as amended through St. 1943, c. 334, § 7). "If a candidate nominated for a state . . . office . . . withdraws his name from nomination . . . the vacancy . . . may be filled by the same political party or persons who made the original nomination, and in the same manner; or, if the time is insufficient there-

for, the vacancy may be filled, if the nomination was made by a convention or caucus, in such manner as the convention or caucus may have prescribed, or, if no such provision has been made, by a regularly elected general or executive committee representing the political party or persons who held such convention or caucus. In the event of the withdrawal . . . of any candidate of a political party nominated by direct nomination for any office, the vacancy may be filled by a regularly elected general or executive committee representing the election district in which such vacancy occurs, or, if no such committee exists by the members of the town committee in any town comprising such district, by the members of the ward committee or committees in the ward or wards comprising such district if within the limits of a single city, or by delegates chosen . . . by and from the members of the ward and town committees in the wards and towns comprising such district if within the limits of more than one municipality, at a meeting to be called . . . . Each ward and town committee in the wards and towns comprising such a district within the limits of more than one municipality shall, as occasions arise, choose from its members delegates to fill vacancies as hereinbefore provided, in such manner as it may determine . . . and shall forthwith notify the state secretary of the delegates so chosen. . . . If a vacancy is caused by withdrawal, certificates of nomination made otherwise than in the original manner shall be filed within seventy-two week day hours in the case of state offices . . . succeeding five o'clock in the afternoon of the last day for filing withdrawals. They shall be open to objections in the same manner, so far as practicable, as other certificates of nomination. . . ." G. L. (Ter. Ed.) c. 53, § 14. "When certificates of nomination and nomination papers have been filed, and are in apparent conformity with law, they shall be valid unless written objections thereto are made. Such objections shall be filed as to state offices with the state secretary . . . within the seventy-two week day hours . . . succeeding five o'clock in the afternoon of the last day fixed for filing nomination papers. Objections so

filed with the state secretary shall forthwith be transmitted by him to the state ballot law commission." G. L. c. 53, § 11 (as amended through St. 1956, c. 135).

The petitioner urges that § 11 does not apply because the certificate is not "in apparent conformity with law." We cannot agree. The petitioner's argument that the certificate should state that the delegates have been elected, have met, and have made the nomination is in part an attack upon the form provided by the Secretary. We do not think that it was incumbent upon the delegates to revise its wording. To have done so might have invited trouble. The reference to the Seventh Middlesex Senatorial District, which is composed of more than one municipality, shows that action by delegates was required. The language of the form embraces such action. We think that the certificate sufficiently shows that the delegates have met and have made the nomination.

The petitioner contends as to twenty-eight delegates that the secretaries of their respective town committees had not filed lists of membership with the Secretary, as required by G. L. c. 52, § 5 (as amended through St. 1938, c. 346, § 1). Such failure, however, is not revealed by a reading of the certificate. Nor is it there revealed that the Republican town committee of Wilmington did not "forthwith notify the state secretary of the delegates so chosen," five in number, in accordance with c. 53, § 14.

Absence of a recital that the certificate was signed and sworn to by the chairman and secretary of the meeting did not require that the certificate be treated by the Secretary as not "in apparent conformity with law." We need not construe the ambiguous provisions of G. L. c. 53, § 15[1] (as amended through St. 1943, c. 334, § 9), in this respect.

---

[1] "When a nomination is made to fill a vacancy caused by the death, withdrawal or ineligibility of a candidate, the certificate of nomination shall, in addition to the other facts required, state the name of the original nominee, the fact of his death, withdrawal or ineligibility, and the proceedings had for filling the vacancy; and the presiding officer and secretary of the convention or caucus, or the chairman and secretary of an authorized committee, shall sign and make oath to the truth of the certificate, and it shall be accompanied by the written acceptance of the candidate nominated. Such certificate shall be filed with the state secretary in the case of state elections . . . ."

There was no binding construction holding that § 15 called for such attestation where the action certified was the action of a "meeting" of delegates, rather than the action of a "caucus," a "convention," or a "committee." The delegates used the form established by the Secretary. That form was attested. In this respect there was compliance with the general intent of § 15 if that section were to be construed as containing no requirement for attestation of the action of such a meeting. Moreover, it was not apparent from the form that the signatures of the chairman and secretary were not included. In the circumstances the Secretary's acceptance of the certificate was adequate to establish the certificate as an operative instrument in the nominating process. If anyone had wished to go behind the certificate and attack the action of the delegates, the sole remedy was under § 11. If that had been done, it would have been seen that the nomination was properly made by those who had the right to make it.

The legislative purpose is clear that so far as possible disputed nominations shall be settled early before the time for printing the ballots. To this end the ballot law commission has been created with power to summon witnesses, to require the production of books and papers, to administer oaths, and to render a decision which shall be final upon any matter within its jurisdiction; but to render that decision within a prescribed time, otherwise the Secretary shall cause to be printed the ballots. See, for example, G. L. (Ter. Ed.) c. 6, § 29, § 32 (as amended through St. 1957, c. 193, § 2); G. L. c. 30A, § 14 (as amended through St. 1957, c. 193, § 1). Our construction of G. L. c. 53, § 11, as amended, is in harmony with the legislative purpose. A contrary construction would not be.

*Petition dismissed.*


COUNIHAN, J. I concur in the result arrived at in the opinion of the majority of the court. I am unable, however, to agree with all of the reasons advanced by the majority in reaching such a conclusion.

I am of opinion that the petitioner had a complete and adequate statutory remedy to test the validity of the certificate of nomination filed in behalf of the intervening respondent, under c. 53, § 11, as amended through St. 1956, c. 135, and § 12 as amended through St. 1943, c. 334, § 7. Section 11 reads so far as material, "When certificates of nomination . . . have been filed, and are in apparent conformity with law, they shall be valid unless written objections thereto are made [within a designated period of time]. . . . Objections so filed with the state secretary shall forthwith be transmitted by him to the state ballot law commission." Section 12 provides for hearings and a determination of the objections by the ballot law commission within a designated period of time.

I am of opinion that the purported certificate of nomination of the intervening respondent to fill a vacancy caused by the withdrawal of the candidate who had been duly nominated at the primary election was not in conformity with law in many respects, particularly in that it failed to disclose that it was signed and sworn to by the chairman and secretary of the meeting of the delegates in their respective capacities, as required by c. 53, § 15, as amended through St. 1943, c. 334, § 9. In these circumstances the petitioner within the designated period of time should have filed objections to the certificate of nomination filed with the Secretary so that the validity of such nomination certificate be determined by the ballot law commission. Failing to pursue such procedure he cannot now be heard on his petition for a writ of mandamus.

I agree that c. 53 is loosely drawn and in many respects it appears to be vague and ambiguous, but the requirement that a certificate of nomination, such as we have before us, be signed and sworn to by the chairman and secretary of the meeting of delegates appears to me to be plainly clear. It is mandatory and not directory. Cf. *Carr* v. *Burke,* 333 Mass. 365, 368.