## IVINSON *v.* HANCE ET AL.

MUNICIPAL CORRORATIONS—PERSONAL PROPERTY.—Village lots to which no title has been derived from the United States are not property that should be assessed, but improvements thereon may be assessed as personal property.

CITY WARRANTS.—The board of trustees or managing officers of a municipal corporation may issue warrants upon the treasury, to be used as evidences of indebtedness, although there is no money in the municipal treasury at the time, and although not specially authorized so to do by the city charter, under which they were proceeding.

TAXES.—Taxes cannot be levied upon lands to which the title yet remains in the United States.

COURTS OF CHANCERY—TAXATION.—Courts of chancery may interfere to restrain the collection of taxes, but only where a cloud may cast upon the title of real estate, or irreparable injury committed.

APPEAL from the District Court for Albany County.

A full statement of the case appears in the opinion of the chief justice.

*J. W. Kingman*, for complainant.

I. As to jurisdiction in equity to restrain the levy and collection of illegal taxes, and the illegal disbursements of public funds: See Dillon, 677, 693.

II. As to the purposes and powers of municipal corporations: Dillon, 17–25, 28, 153.

III. These corporations have no powers, except such as are expressly granted: Dillon, 101 *et seq.;* Cooley's Const. Lim. 194–197, and notes.

IV. As to their power to tax: Dillon, 560–3–4, 576, 580; see plaintiff's bill, 1–5; City Charter, secs. 27, 29.

V. What is taxable property in this territory and under this charter: Dillon, 583, 591; Cooley's Const. 499, 501, 515; 10 Wis. 187, 206; see bill, 1, 2.

VI. As to the method of passing ordinances, first notice: Dillon, 251, 273, 282; second publication: Dillon, 286; Stat.

of 1869, 206, sec. 16.   Must be subordinate to general laws and conformable thereto: Dillon, 284, 308; Cooley's Const. 198, 370.

VII. An intentional omission of taxable property vitiates the whole tax: 10 Wis. 187, 206; 16 Wis. 118.

VIII. As to the limitations of the power to tax: Cooley's Const. 518, note; City Charter, 206, secs. 15, 18; City Charter, secs. 23, 26; Cooley's Const. 520, note; Dillon, 580.

*M. C. Brown,* for defendants.

This case stands on the bill, demurrer, affidavits, and certain agreed facts.   The point to be considered and determined is as follows:  Are the facts presented by the record in this case sufficient for the court to order a perpetual injunction to restrain the city trustees from enforcing the tax ordinances of the corporation of Laramie City and the collection of the tax assessed under and by virtue of the authority of the said ordinances and the said board of trustees?

As to the first point, that the board did not determine the amount of the tax for the current year before the third Tuesday of May, we claim the statute is directory merely, and that a determination of the amount of tax after that time does not invalidate the tax: *Gearhart* v. *Dixon,* 1 Penn. St. 224.

In reference to the second point that the description of the property assessed is not in accordance with law, the bill alleges that the laws of the territory require certain things to be done and a certain formula to be followed, and that we did not do it in that way.   The bill does not allege what we did do and show wherein we erred, but states negatively a legal conclusion.   To sustain the proposition that a conclusion of law is not a fact to sustain a bill of complaint needs no citation of authorities.   But if the matter was stated in a proper form, we claim that the statute is directory in its terms: Laws of Wyoming, 1869, ch. 28, sec. 33.

As to the third point urged by complainant, which is in reference to the neglect of the assessor to assess town lots and assessing buildings and improvements thereon; it is admitted by the record and was so agreed in the lower court, that no patent has issued by the United States for any of the lands or lots within the corporate limits of said town of Laramie City. Since, then, no patent had issued for any of these lands, we conclude title to the said land is yet in the United States. If title is in the United States, then the lots could not be assessed, and the improvements thereon must be assessed: Laws of Wyoming, 341–42; *Counties of* ——, *in Nebraska* v. *U. P. & C. B. & Q. R. R.*, decided by Dillon in the U. S. Circuit Court; 3 Ohio State.

Again, if the court holds that the errors in the assessment are such as to make the assessment wholly void, then there is no ground for perpetual injunction, or to restrain the collection of the tax by sale of personal property levied on by the collector: 2 Dill. Mun. Corp. 839; 55 Conn. 232; 24 Mo. 20; 17 Id. 474; 29 Wis. 51; 21 Id. 44; 28 Id. 583; 2 Cal. 590; 4 E. D. Smith, 675; 6 Cal. 273; 12 Id. 298–99; 33 Barb. 322; 23 Miss. 443; 22 Ill. 34, 303, 574; 4 Barb. 9, 17; 25 N. Y. 312; 22 Miss. 90; 26 Ill. 610; Hill on Inj. 458.

We further claim that all other matters in the bill are objectionable on the grounds of impertinence and multifariousness: Story's Eq. Pl., secs. 266–7; 1 Daniels Ch. Pl., 341, 356.

By the Court, FISHER, C. J. This was a bill in equity filed in the district court of Albany county, of September term, A.D. 1874, to restrain defendant from collecting certain taxes levied by the board of trustees of Laramie City for municipal purposes. To which bill the defendants filed a general demurrer, which was overruled by the court. The counsel for the respective parties then entered into a stipulation to submit all the matters in controversy to this court at the March term, A. D. 1875, so that the question to be

determined is, should the demurrer have been sustained or not?

The stipulation of the parties sets out that at the date of the act of incorporation of Laramie City, the title to the land on which the town was built was still in the United States and was part of a military reservation, that the boundaries of the reservation have been decreased so as to have the incorporated portion without the bounds of said reservation, but that the title to the lands in question had not been changed but still remained in the government.

The question therefore arises as to whether the town lots in the possession of citizens are subject to taxation as real estate. It is also agreed that in levying taxes unimproved lots were not listed and assessed for purposes of revenue, and that where lots had been improved by the erection of buildings that said buildings were listed and assessed as personal property. It is further stipulated that certain indebtedness existing against said city arose from the issuance of city warrants in regular form by the board of trustees of said city. It is claimed in plaintiff's bill that the city trustees exceeded their authority by the issuance of city warrants, thus creating a debt without complying with the terms of the city charter, and that they claim that a court of equity has jurisdiction to restrain the collection of taxes for this reason, as well as for the reason of the non-assessment of the real estate. They also complain of certain irregularities in the proceedings of the trustees, and of the city marshal in the attempt to enforce the collection of the taxes by restraint of plaintiff's property.

The foregoing are the main questions upon which the decision of this court is invoked. The act of congress entitled "An act to provide a temporary government for the territory of Wyoming," approved July 25, 1868, sec. 6, provides among other things that "no law shall be passed by the legislature of said territory interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States." And the legislature, at its ses-

sion of 1869, passed an act entitled "An act to provide a territorial and county revenue, see laws of 1869, pp. 340-1-2. The third section of which provides that all property, real and personal, within this territory is subject to taxation in the manner herein directed, and this section is intended to embrace lands and lots in towns, including lands bought from the United States, whether bought on credit or otherwise; buildings or improvements erected upon lands the title to which remains in the United States, or in any incorporated company." If the enumeration of things in particular excludes things in general, then there is no room to doubt that there is no power given to either the territorial legislature, or any municipal corporation within the territory, to tax the lands the title to which is in the United States, and that they are expressly prohibited by the sixth section of the organic act from the assessment or collection of taxes from lands so long as the title remains in the United States. And the legislature certainly took the same view of the question when they passed the third section of the revenue act of 1869. This question being so fully settled by those enactments, it would be a waste of time to examine it further.

It is true that the learned counsel for the plaintiff have cited a large number of authorities upon the subject of taxation, all tending to show that all property should bear its equitable share of the expenses of government, but as long as the prohibitions in the act organizing the territory, and the act providing for the raising of revenue are on the statute books, it is labor in vain to talk of the equities of the case. The next question submitted is, as to the power of the trustees of the city of Laramie. The eighteenth section defines the power and duties of the said trustees very fully, and this and other sections of the act of incorporations gives them power to levy and collect such an amount of taxes as may be required to conduct the affairs of the city, and in the imposition of the taxes they are to be governed by the territorial laws.

While the twenty-third section provides that the trustees shall not incur any debt or borrow money for the use of the city without having the concurrence of five eighths of the taxable property owners, to be ascertained by a petition for that purpose. Now, what is the meaning of this section? Does it mean that no work shall be done on the streets, nor anything done by which a debt shall be created against the city until five eighths of the citizen taxpayers shall first apply by petition to have such work done? Surely not. Statutes are to be construed in a reasonable manner, and where there appears to be something conflicting, we are to compare one part by another, and in this way inquire into the will of the legislature in the passage of the statute, so that if the conflict be not so great as to destroy the whole force of the law, we are to interpret it so that the whole may stand: See 1 Blackstone, ch. 1.

Now, what was the intention of the legislature when they passed the law incorporating the city of Laramie? Did they intend to say that no debt should be created by street improvements, fire and water regulations, the providing places in which to keep prisoners, the pay of the marshal and other officers, without first having a petition signed by three fifths of the taxable citizens? Surely not. What, then, is meant by the prohibition contained in the twenty-third section? Simply that no extraordinary expenditure of the funds of the city should be made, or permanent debt be created by borrowing money on the credit of the city, without such permission being first had and obtained. Otherwise, how could the ordinary expenses of the corporation be met? We, therefore, think there can be no doubt that the trustees of Laramie city were fully empowered, under the terms of the city charter, in levying and collecting a tax sufficient to meet the ordinary expenses of the corporation. There was another question raised on the argument of the case, although not embraced in the written stipulation of the parties, and that is, as to whether the trustees proceeded in the proper manner to make the assessment. Of this there is some

doubt; but inasmuch as it is not fairly presented to us, nor do we consider it as appealing to a court of chancery for relief, we do not feel called upon to more than give it an incidental notice.

The only question remaining to be considered is that of the jurisdiction of the court sitting in chancery to pass upon the question of the collection of taxes, so as to call for interference by injunction. This question has been so frequently passed upon that it should be governed by the rule *stare decisis.* It is but seldom that courts of equity will interfere by injunction to restrain the collection of taxes, even where they have been illegally assessed. There are cases, however, where courts of equity will interfere. Such as where there is no complete remedy at law; where a cloud may be cast upon the title to real estate by a sale for taxes; where the parties collecting an illegal tax are wholly irresponsible, or where a multiplicity of suits would result from an appeal to a court of law. But we fail to see in the case at bar wherein either of these points arise. First, we have seen that the cause of complaint of the non-assessment of the realty embraced within the bounds of the corporation is removed by the provisions of the organic act of the territory and laws of the territorial legislature; Second, that the trustees are fully justified by the provisions of the charter to levy and assess a tax, reasonable in amount, to meet the ordinary expenses of the municipal government, and there is not even a complaint that the rate of assessment is too high.

There, of course, cannot be any such thing as a cloud upon the title, and there is nothing in the stipulation or record which justifies the conclusion that a multiplicity of suits are likely to grow out of the collection of the taxes; and as to the legality of the assessment, that can be settled in a court of common law jurisdiction—by an appeal which performs, under the laws of this territory, the same office as *certiorari* at common law, or the writ of *certiorari* itself can be resorted to, even though no statutory provision has been made for its issuance, because our statutes provide

that in the absence of statutory provisions, the common law remains in full force.   We thus have arrived at the conclusion that there is nothing in plaintiff's bill which entitles him to relief in a chancery proceeding, from the fact that ample relief may be found in the common law side of the court, and that but for the stipulation of the parties by which the case was brought here for adjudication, the court below would have been justified in sustaining defendant's demurrer.

The plaintiff's bill is dismissed.