## WHEATLAND IRRIGATION DISTRICT,

Appellant (Petitioner below),

**v.**

Lester SHORT, Melvin Short, Charles Clack, A. M. Downey, Hillary Bartlett, Vincent Utter, Emerson Utter, Guy M. Holmes, the Ayres Partnership, G. W. Goodrich, Ella Day, J. C. Hall, Andrew Roskie and Margaret Roskie, A. E. Barrett, Everett Prichard, Roy Starr, et al., Appellees (Objectors below).

No. 2884.

Supreme Court of Wyoming.

May 12, 1959.

339 Pac.2d 403

138

Jones & Jones, Wheatland, for appellant.

W. J. Wehrli, Casper, for appellees.

Heard before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

## OPINION.

Mr. Justice PARKER delivered the opinion of the court.

This is an appeal from an order of the district court which struck from the budget of The Wheatland Irrigation District an item designated as "Land Loan Repayment-Ringsby—$37,500.00."

The Wheatland Irrigation District was created on August 15, 1947, by decree of court under the authority of c. 71, art. 8, W.C.S.1945, as the successor of two companies, the Wyoming Development Company and The Wheatland Industrial Company, which had for many years prior thereto maintained the principal irrigation system in Platte County.[1]

The district being in existence by reason of statute and its activities controlled thereby, the original irrigation district legislation and its subsequent history are of importance. The legislature passed c. 72, S.L. of Wyoming, 1907, providing generally for the organization of irrigation districts and the construction of irrigation works. This law was amended in 1911 and almost completely revamped by c. 2, S.L. of Wyoming, Spec. Sess., 1920, "Providing for the formation and organization of Irrigation Districts and conferring certain powers thereon." This 1920 Act with some later amendments now constitutes art. 8. It set up the procedure for the organization of an irrigation district, delineated the powers, and provided among other things for the assessments, preparation of assessment rolls, collection of assessments, and enforcement of payments.

To ascertain whether or not the steps taken in the instant case have been in accordance with art. 8, we review the record on appeal, which apparently purports to contain all of the official acts since the organization of the district.

---

[1] The project was started in the early eighties by a group of men who formed a corporation for development purposes and was known as the Wyoming Development Company; later an additional company, The Wheatland Industrial Company, was formed.

First there is the petition of the freeholders of the area setting forth various relevant facts and praying for organization. This was accompanied by a signed "Preliminary Engineering Report to Accompany Petition * * *," outlining in general the history of the Wyoming Development and Wheatland Industrial companies, referring to the water rights, tunnels, canals, water supply, and costs, which report was approved by the state engineer. Certain objections to the proposals were allowed and some disallowed, but the court approved and confirmed the organization and subsequently granted the district commissioners authority to execute an agreement with the former companies by which the new district would undertake to assume the obligations and succeed to the interests of its predecessors in maintaining the irrigation system. Some eighteen months later the commissioners filed with the court an application for authority to borrow $125,-000 from the Wyoming Farm Loan Board, which amount was to be evidenced by bonds of the district. According to the allegations, the borrowed money was to be used as follows:

> "Construction and repairs......................$49,000.00
>
> New equipment and repairs.................. 64,014.31
>
> Payment of fixed expenses.................... 11,985.69"

The commissioners concurrently filed a report and budget of the district for the ensuing year, setting forth certain estimated future expenses including an item of interest and principal on the $125,000 loan. After notice this report and budget came on for hearing and was approved.

On May 7, 1957, the commissioners of the district filed with the court a petition for authority to borrow

from the Wyoming Farm Loan Board a sum of money not to exceed $2,400,000 to be used for the purchase of ranch lands in Carbon and Albany counties to acquire certain water rights used in conjunction therewith; to construct new irrigation canals and other facilities; and to repair, enlarge, and renovate existing facilities—$1,500,000 to be used in the purchase of the ranch lands and the construction of water conduction facilities therefrom and the remainder for enlargement of storage facilities of the district and other contemplated improvement and renovation.[2]

The petition alleged that the facts regarding this matter had been explained at a public meeting in April 1957 at which a regularly conducted election had been held, 178 landowners voting 31,248 acres in favor and 20 landowners, 4,524 acres against. (There was no filing of a preliminary engineering report.) The court thereupon issued an order to show cause. A resistance to the petition, filed by A. M. Downey, was overruled by the court on May 29, 1957, after hearing. The court on the same day issued an order granting authority to the district to borrow the said $2,400,000 from the Wyoming Farm Loan Board.

Thereafter on June 4, 1957, the commissioners filed a petition for adjudication of the budget for the ensuing year in the amount of $88,000, calling attention to certain amounts they had on hand and noting that they would pay the installments on the $125,000 bonded in-

---

[2] Although the record is not entirely clear, it appears that the transaction for the expenditure of $1,500,000 has been concluded while the remaining $900,000 has never been expended or budgeted by item.

debtedness to the Wyoming Farm Loan Board from the proceeds of the loan authorized on May 29, 1957. The commissioners stated that a levy of $1.25 per acre should be made on 55,948.63 acres of land in the district, asked the court to fix a time for hearing of objections and for the approval of the budget and the authorization of an assessment for the current year in the sum of $1.25 per acre on all lands in the district. The court thereafter fixed a time for hearing, and on July 12, 1957, adjudicated and approved the budget of $88,-000.

On May 27, 1958, LeGrande T. Page, Commissioner of District No. 1; Woodrow May, Commissioner of District No. 2; Harlem McLeod, Commissioner of District No. 3; G. E. Graefe, Commissioner of District No. 4; and Oscar B. Gudahl, Commissioner of District No. 5, each filed with the court an identical paper, purporting to be an "Assessment for Benefits" and stating, inter alia:

"I * * * do hereby make and assess benefits for lands situate within said District * * * in compliance with the laws of the State of Wyoming and for the purpose of determining how the payment of the District's indebtedness shall be apportioned among said lands.

"I have heretofore regularly called a meeting of the land owners within my District and have openly discussed with them at said meeting the various elements and factors to be considered in arriving at this assessment. * * *

*     *     *     *     *     *

"After giving due consideration to all of the facts, circumstances and elements involved, I do

hereby assess equal benefits to all lands situate within my District."

Neither the amount of benefits to be caused by the proposed work nor a total itemization of the cost was mentioned in the papers.

On June 2, 1958, the commissioners filed a petition for adjudication of the budget for the ensuing year, listing estimate of money needed as $139,083 (including the item, "Land Loan Repayment-Ringsby—$37,-500.00") and praying for an authorization of assessment in the sum of $2.50 per acre for all acreage in the district. The court thereupon entered an order fixing a time and place for hearing on the budget. On June 17, 1958, Florence L. Kindom filed a letter objecting to an increase in the water tax. On June 21, 1958, Mrs. Hilary Glen Bartlett by Albert B. Bartlett filed a paper stating her objections, and Mr. Bartlett filed a similar paper on his own behalf. On the same day the persons herein listed as appellees filed a joint objection pointing out among other things that no petition or application for benefits had been filed by the district and praying that the $37,500 item be stricken.

The court on June 23, 1958, entered an order reciting motion of objectors "that no assessment for benefits[3] be determined by the Court at this time because of the lack of jurisdiction due to there not being on file or on record a petition or application of the Board * * * requesting such assessment for benefits and setting out the facts to support the same," decreeing that

[3] C. 71, art. 8, uses the terms "assessment of benefits" and "assessment for construction."

the $37,500 item be removed from the budget, and reducing the per-acre levy accordingly, from which order this appeal has been taken.[4]

The commissioners now contend that they have complied with all of the irrigation district statutes and that the item of $37,500 for the improvement of the existing water supply and the extension of the irrigation works was improperly stricken by the court. In order to determine the correctness of this contention, we look to art. 8 and, in particular, to the two sections which require information to be supplied to the court as a condition to the improvement and extension sought.

Section 71-801, W.C.S.1945, provides that:

"Whenever a majority of the freeholders * * * in any district * * * desire to provide for the irrigation of the same; or to improve the existing water supply for said lands; or to purchase, extend, operate or maintain constructed irrigation works * * * they may file in the district court of the county which embraces the largest acreage of the district, a petition, hereinafter referred to as the 'petition,' which shall include:"

thereafter listing various essentials including a preliminary engineering report.

Section 71-814, W.C.S.1945, provides that:

"* * * said commissioners shall * * * report in writing to the court.

---

[4] On the same day the court entered an order approving the remainder of the budget and reciting that the $37,500 item had been stricken.

"1. The extent and character of the proposed work and the sufficiency of the water supply.

"2. If it be found necessary to change the boundaries of said proposed district, previously fixed, they shall report said proposed change * * *.

"3. What lands within the district, as by them reported will be injured by the proposed work * * *.

"4. All lands within the district as by them reported will be benefited by the proposed work and they shall assess against such lands by whomsoever held the amount of benefits which they determine will be caused to the same by the proposed work, and in case of lands have [sic] appurtenant thereto a partial water right or partial rights in a system of irrigation the assessment shall be according to benefits making due allowance for existing rights. The benefits so assessed are herein referred to as 'The assessment roll.'

"5. They shall also determine and report to the court the total itemized amount as near as they can determine, that said proposed work will cost, including organization expenses and the unit cost upon which the assessments are based, which shall be designated as 'cost of construction.'

"6. If the cost of construction of any particular part of the work so proposed to be done shall be assessed upon any particular tract or tracts, lot or lots of land, the commissioners shall so specify, and in their report they shall fix and determine the sums which should be assessed against said tracts and lots, and assess such sum against said tracts and lots.

"7. They shall apportion and assess the part of this 'cost of construction' not assessed as above, against the several benefited tracts and lots in

said irrigation district, in proportion to the benefits which they have assessed against the same, by setting down opposite each tract or lot the sum which they assess against the same for construction. The assessments which together make up the cost of construction, as above defined, are herein referred to as 'assessments for construction.'

"8. They shall set forth in their report the amount of water by them apportioned to each separate tract or lot of land in said district, to be assessed.

"9. The commissioners shall further report to the court the probable cost of keeping said proposed work in repair after it is completed.

"10. They shall include in their said report, said map, plans and other specifications, and file the same with their report."

The commissioners concede that neither they nor their predecessors filed any report under the provisions of § 71-814. In admitting noncompliance with the statute, counsel say they do not know whether the commissioners "neglected to make a 'Report' and assess the benefits therein because of their failure to be advised that it was their legal duty to do so, or whether the 'Report' was intentionally not made because the Commissioners determined the same to be unnecessary." They insist that the irrigation works, canals, reservoirs, etc., had been in existence for many years, that it would have been a worthless and needless thing for the commissioners to make a report providing the information because no works were proposed, and they urge that the law will not require the doing of a useless thing. They go on to say that when the present commissioners discovered that "there had never been an assessment of benefits confirmed by the court as

required by law" they immediately followed the course open to them as provided under § 71-830, W.C.S.1945, each commissioner calling a meeting of his district, giving notice of the date of meeting, holding respective meetings, and making the assessments heretofore mentioned. Counsel argue that such an assessment of benefits applied equally to all land; and on the authority of May v. City of Laramie, 58 Wyo. 240, 131 P.2d 300, and Kimbel v. Osborn, 61 Wyo. 89, 156 P.2d 279, 158 A.L.R. 1079, they say:

"* * * There are 55,633.36 acres, approximately, of land in the District and the indebtedness which was incurred for the benefit of the entire District was in the sum of one million five hundred thousand dollars ($1,500,000.00); therefore *by the process of simple computation,* the benefits were assessed in the sum of approximately twenty-six dollars and ninety-six cents ($26.96) per acre." (Emphasis supplied.)

and maintain that the equal sharing of the expenditures on a proportional basis by all the lands in the district is justified in law. They attack the statement of the trial court that it lacked jurisdiction because no assessment for benefits had been made, arguing that the court would have jurisdiction under § 71-830, relating to "Omission to assess benefits * * * against any land or person which should have been assessed." They also insist that the acts of the commissioners must be presumed to be valid and say that the irrigation district law should be liberally construed to promote the public welfare.

Let us examine then the views of the objectors. Counsel urges that there has been no assessment of benefits and therefore no levy could be made against the lands of the district. He says, "there apparently

was no contemplated construction at the time the district was formed, and consequently there was not attached to the petition for organization of the district such preliminary engineering report on the feasibility of the project, including a report on the sufficiency of its water supply and an estimate of the cost of construction." This is not urged as a fatal defect, but it is insisted that when the plan for new construction and expenditures for water rights and property developed, it was incumbent upon the commissioners to make either the report required by § 71-814 or the supplemental report mentioned in § 71-821 [5] for the purpose of having benefits assessed and confirmed. He contends that in the absence of assessment the commissioners are without authority to borrow any money or make any levy against the lands in the district, quoting § 71-831, W.C.S.1945:

> "The commissioners may borrow money, not exceeding the amount of 'assessment for construction' as herein provided, unpaid at the time of borrowing for such purposes, or for the payment of any indebtedness they may have lawfully incurred, and may secure the same by notes or bonds * * *."

With the above arguments in mind, we advert to the record of what has been done in this case to ascertain whether or not the judgment of the trial court is correct.

The preliminary engineering report which was attached to the original petition in 1947 was sketchy and

---

[5] Obviously the filing of a *supplemental* report permitted by this section is dependent upon their being an *original* report.

general; admittedly no report of the commissioners was filed under the provisions of § 71-814 either immediately after the formation of the district or since that time. The "Assessment for Benefits" which each of the commissioners filed on May 27, 1958, assumed to divide the proposed expenses, *without stating them*, equally among the landowners. It is doubtful that a certain sum can be taken as a basis for any assessment unless the amount thereof has been determined in the manner designated by law. However, it is unnecessary for us to discuss these purported assessments at any length. They are clearly ineffective since whatever their other shortcomings they have never been confirmed by the court. Although the commissioners argue at some length that the benefits have been properly assessed, they do not contend that there has been any report upon which an assessment could be based.

The commissioners have relied upon § 71-830 as authority for calling of meetings by the respective commissioners and the subsequent assessment of benefits. Primarily, this section provides that the omission to make irrigation district assessments "against any land or person which should have been assessed," shall not "affect the jurisdiction of the court to confirm the report" or to make the assessments as soon as the omission is discovered and shall not render the assessments against other lands voidable. Since it is not here contended that any report was ever made under the provisions of § 71-814, § 71-830 is inapplicable. It seems clear that § 71-830 purports to deal with inadvertent omissions of certain areas rather than failure to file an assessment of benefits on all the lands in the district.

The trial court's reference in the findings to "the lack of jurisdiction" is somewhat confusing. It is our

view that the trial court had jurisdiction to pass upon the budget and accept or reject the various items, and this was true notwithstanding the fact that some prerequisite to a certain item had not been met. Perhaps the reference to lack of jurisdiction was inadvertent. In any event, it does not vitiate the judgment if the court arrived at the correct result. See 5B C.J.S. Appeal & Error § 1787, citing Cook v. McDonald, 60 Wyo. 215. 148 P.2d 594; 5B C.J.S. Appeal & Error § 1849, citing State v. Alexander, Wyo., 324 P.2d 831; and see Peterson v. Johnson, 46 Wyo. 473, 28 P.2d 487, 91 A.L.R. 723.

From what we have said, it is clear that the $37,500 item requested by the commissioners in their petition for adjudication of June 2, 1958, was one falling within the provisions of § 71-801. The officers of the district having ignored the clear prerequisites of the irrigation district statutes, the trial court had no alternative but to strike the item. The judgment must therefore be affirmed. This is not to say that the failure to comply with the requirements of the statues cannot be cured by the commissioners hereafter taking the required steps. Although a general interpretation of the irrigation district law is beyond our obligation, it may be desirable that we discuss the matter briefly in order that these parties may be the better enabled to follow the directions of the legislature as we interpret them.

The first section of the article, 71-801, permits the majority of the owners of the land in the district to file a petition whenever they desire to (a) provide for the irrigation of the lands; (b) to improve the existing water supply for the lands; (c) to purchase, extend, operate, or maintain constructed irrigation works; or

(d) to cooperate with the United States in certain respects under federal reclamation laws.

It seems to us that under a reasonable interpretation the legislature meant the succeeding sections to govern *any* of these circumstances. It would be unreasonable to choose one of the above-mentioned functions to the exclusion of the others. As this court said in one of our first reported cases, Ivinson v. Hance, 1 Wyo. 270, 275, "Statutes are to be construed in a reasonable manner." And see 2 Sutherland Statutory Construction, 3 Ed., § 4508.

Any confusion as to the proper steps for a district or its officers to take in a certain situation would seem to grow out of the fact that the legislature has recited multiple objectives and subsequently outlined procedures, some of which are obviously inapplicable to the accomplishment of certain of the objectives. We think that insofar as possible effect must be given to every part of the statute. Coady v. Batchelder, Wyo., 335 P.2d 443; Radalj v. Union Savings & Loan Ass'n, 59 Wyo. 140, 138 P.2d 984, 141 P.2d 856; Cuthbertson v. Union Pac. Coal Co., 50 Wyo. 441, 62 P.2d 311. This means that if a procedure is applicable to a stated objective there must be compliance. Accordingly, the district or its officers should fulfill every requirement of the statutes which reasonably can apply to that which is expected to be accomplished under § 71-801. In our view, it would be absurd to say that the report required by §71-814 must be furnished at the time of the organization of a district but is not required at any later time even though the district then seeks "to improve the existing water supply for said lands; or to purchase, [and] extend" constructed irrigation works in an amount which equals or exceeds the cost of the

original works.  We have often held that a statute if susceptible of other interpretation will not be construed so as to produce absurd results.  Texas Co. v. Siefried, 60 Wyo. 142, 147 P.2d 837, 150 P.2d 99; Huber v. Thomas, 45 Wyo. 440, 19 P.2d 1042; Houghton Bros. v. Yocum, 40 Wyo. 57, 274 P. 10.  And see 3 Sutherland Statutory Construction, 3 Ed., § 5505.

Originally, even the cost of maintenance was within the provisions of § 71-801 so as to require the filing of the report under § 71-814.  In 1923 the legislature revised § 973, C.S.1920 (now § 71-823), and added the section which is now 71-824, providing for the filing with the court of an "itemized estimate of the money to be raised by assessment within the district for the purpose of constructing new work, maintenance and to meet the yearly current expenses of the district." Such additional provision in effect eliminated the "expenses of any current year" from the requirements of §§ 71-801, 71-814.  The words "new work" used in the statute are to be read in connection with the words "expenses of any current year" and when so construed mean work which may in one sense be considered new, as distinguished from strict maintenance, but is nevertheless work which would tend to continue the district in as good condition as in the past rather than an extension of the irrigation works or improvement of the existing water supply.  Any question on such classification of proposed work is subject to determination by the district court to which the budget is submitted. To state it another way, § 71-824, providing for the submission of an itemized estimate of yearly current expenses and hearing thereon after notice, sufficiently protects the freeholders as interested parties and informs the court so that an intelligent determination may be made as to the assessments for such purposes.

Any other assessments can be effective only after due hearings based on preliminary engineering report (§ 71-801) and commissioners' report (§ 71-814). This will inform landowners as to the proposed expenditures, the measure of the prospective benefits, and their assumption of the increased expenses and will simultaneously enable the court to make intelligent decisions thereon.

In the light of this last discussion perhaps some general statement should be made about the procedures of The Wheatland Irrigation District during the past dozen years of its existence. The preliminary engineering report attached to the 1947 petition was general and undoubtedly was vulnerable to attack except that long previous existence of the works and public knowledge of the project's operations tended to make this requirement as well as some other prescribed procedures mere formalities. The commissioners at that time failed to file a report under the provisions of § 71-814. Technically this was a violation of the statute, which, though conceivably excusable during the first few years requiring current expenses only, could not be overlooked at the time that the commissioners contemplated both improvement of the existing water supply and extension of the irrigation works. If the district intends to proceed legally with the contemplated substantial improvements of water supply and extension of the irrigation works, the filing of both of these reports is essential.

Affirmed.