SIDNEY H. WEINER *vs.* CITY OF BOSTON.

Suffolk.    December 6, 1960. — February 13, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Retirement. Pension. Veteran. Equity Jurisdiction,* Taxable inhabitants' suit. *Municipal Corporations,* Officers and agents, Municipal finance. *Estoppel. Statute,* Construction. *Words,* "Veteran," "Served," "Provided."

An action of contract against a city to recover instalments of a pension claimed by the plaintiff and disputed by the defendant was a correct method of testing the validity of the claim.    [68]

Approval by a city's retiring authority of an application for retirement on a pension was not conclusive of the question of law whether the applicant was entitled to the pension.    [69–70]

A taxpayers' suit under G. L. c. 40, § 53, to prevent payment of a pension by a city was not the only means open to the city of asserting that the pension was not legally payable; the city could make that assertion in defence of an action against it to recover instalments of the pension.    [70]

The fact that one was recognized and given preference as a veteran in obtaining appointment to a civil service position in a city did not estop the city from subsequently denying that he was a veteran for the purpose of being retired on a pension.    [70]

A judicial construction given to the definition of "veteran" in G. L. (Ter. Ed). c. 31, § 21, previous to the enactment of St. 1945, c. 658, § 1, inserting in G. L. c. 32, § 1, substantially the same definition of "veteran" must also be given to such later definition.    [71–72]

On the facts and under applicable Federal laws, a medical student who enlisted "in time of war" in and later was honorably discharged from the Medical Department, Enlisted Reserve Corps of the United States and as a member of that organization pursued substantially his ordinary civilian life as a student subject to call into active service or for purposes of instruction or training, but never was so called and never became "subject to the laws and regulations for the government of the Army," must be held not to have "served" in the Army and not to be a "veteran" within G. L. c. 32, § 1, as appearing in St. 1945, c. 658, § 1, as amended through St. 1951, c. 526, § 1; G. L. c. 32, § 58.    [72–74]

CONTRACT.    Writ in the Municipal Court of the City of Boston dated January 5, 1959.

The action was heard by *Morrissey,* J.

*Alfred Sigel,* for the plaintiff.

*William H. Kerr,* for the defendant.

KIRK, J. In this action of contract the plaintiff seeks to recover instalments of a pension which he claims are due to him from the defendant because of an alleged retirement under G. L. c. 32, § 58, as amended. The action is a correct method to test the validity of his claim. *Lenox* v. *Medford,* 330 Mass. 593, 595, and cases cited.

The case was tried before a judge of the Municipal Court of the City of Boston on a case stated. The judge found for the defendant and reported the case to the Appellate Division of that court. The report was dismissed. The case comes to us on the plaintiff's appeal from the order of dismissal.

The following facts appear in the case stated: In December, 1917, when the United States was at war the plaintiff was a student at the Harvard Medical School in Boston. On December 17, 1917, he enlisted in the Medical Department, Enlisted Reserve Corps. He passed the prescribed physical examination, took the oath required by law of persons enlisting in the Army of the United States, and was assigned a "service number." He continued his studies at the medical school. He engaged in daily drill under the supervision of army training officers. There is no record to show that he served in a provisional training regiment or that he was ever called to active duty with any other organization while a member of the Enlisted Reserve Corps. The plaintiff was honorably discharged December 23, 1918, as a private in the Enlisted Medical Reserve Corps from the military service of the United States "by reason of military services being no longer required." His record of service on the reverse side of the discharge bears, among others, the following notation: "Remarks Never on active service." The foregoing states all of the service the plaintiff has ever had. In 1925 the plaintiff was recognized as a veteran for the purposes of G. L. c. 31, § 23 (veterans' preference act), when his name was placed on the civil service eligible list from which he was appointed at the time

of his first employment by the defendant as a part-time physician. On December 15, 1955, the plaintiff applied to the retiring authority (the mayor) for retirement from active service as a part-time public health physician under the provisions of G. L. c. 32, § 58, as amended. He had then been in the service of the defendant for more than thirty years. His discharge and record of service, referred to above, were submitted in support of his claim to be a veteran. On December 22, 1955, the retiring authority indorsed the plaintiff's application as follows: "Upon the evidence submitted I find the facts stated in the foregoing application to exist and approve the retirement of the applicant." The defendant's ordinances require that the city auditor sign a draft authorizing its treasurer to pay a retirement allowance before any payment may be made. The city auditor has not signed a draft for the plaintiff. No retirement allowance has been paid to him.

The defendant contends that the plaintiff is not a veteran within the meaning of the statute (G. L. c. 32, § 1, as amended). The plaintiff asserts that he is a veteran and says further that the question of his eligibility for retirement as a veteran cannot be raised by the defendant in this action, and cites, as reasons therefor, the following: (a) the action of the retiring authority in approving the application is conclusive of the issue; (b) the only procedural measure available to the defendant to prevent payment is a suit by not less than ten taxpayers under G. L. (Ter. Ed.) c. 40, § 53; (c) recognition of the plaintiff as a veteran by the Civil Service Commission in 1925 estops the city now to deny his status as a veteran.

We resolve each of these contentions against the plaintiff. (a) As the Appellate Division quite rightly points out, there is no dispute as to the facts; there is only a question of law on the undisputed facts. If the auditor believes a claim is unlawful, it is his duty to refuse approval. G. L. c. 41, § 52. Refusal by the auditor to approve the plaintiff's claim would not bar the plaintiff's right to recover if he is lawfully entitled to payment. See *Godfrey Coal Co.*

v. *Gray,* 296 Mass. 323, 325–326. The approval of the retiring authority is not conclusive.

The contention (b) of the plaintiff to the effect that the exclusive remedy of the defendant is the interposition of a suit by not less than ten taxpayers of the defendant to prevent an illegal payment under G. L. c. 40, § 53, is without merit. Certainly a statute which provides an exclusive remedy to enable taxpayers to prevent a city from expending money illegally cannot be construed to strip a city of its right to defend itself against claims which may result in illegal expenditures. On the contrary, the statutory remedy granted to the taxpayers may be said to be derivative of the right of the city to protect itself and may be availed of by the taxpayers when the city has failed to exercise that right.

The last preliminary question (c) is whether the city is now estopped to deny that the plaintiff is a veteran, he having been so recognized by the Civil Service Commission in 1925 and given preference in his appointment under G. L. c. 31, § 23. We think that the principle of estoppel is not applicable. If the plaintiff was mistakenly classified as a veteran in 1925, he was not harmed thereby. In fact, he gained the advantage of preference in appointment over those who were not veterans. It has often been said, "[T]he law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." *Tracy* v. *Lincoln,* 145 Mass. 357, 360. *Salonen* v. *Paananen,* 320 Mass. 568, 573. We do not consider whether an estoppel would operate to preserve the plaintiff's status as a veteran for civil service preference purposes. We do say that the city is not estopped to deny that he is a veteran for retirement purposes. See *Collins* v. *Boston,* 338 Mass. 704, 709.

There remains for consideration the question whether the plaintiff is eligible for retirement under G. L. c. 32, § 58, as amended. The statute reads: "A veteran who has been in the service of the commonwealth, or of any . . . city . . . for a total period of thirty years in the aggre-

gate, shall, at his own request, with the approval of the retiring authority, be retired from active service .·. ..'' It should be noted, as the case stated recites, ''The plaintiff, having been in the employ of the defendant immediately prior to the effective date of St. 1954, c. 627, is not affected by either St. 1954, c. 627, or St. 1954, c. 688. (See especially St. 1955, c. 708.)'' The definition of ''veteran'' (G. L. c. 32, § 1) was substantially changed by these statutes.

In order to be eligible for retirement under G. L. c. 32, § 58, as amended, a person must meet three requirements: (1) he must be a veteran within the meaning of the statute (c. 32, § 1) as amended prior to 1954; (2) he must have been in the service of the Commonwealth, or subdivision thereof, for a total period of thirty years in the aggregate; and (3) he must be in active service at the time of retirement. Each of these three requirements is a condition precedent to eligibility for retirement. If any one of them is not met, the claim fails. See *Rich* v. *Mayor of Malden,* 252 Mass. 213, 217. See also *Kennedy* v. *Holyoke,* 312 Mass. 248, 249; *Horrigan* v. *Pittsfield,* 293 Mass. 17, 18. There is no question that the plaintiff has met the second and third requirements of this section of the statute.

The basic question is whether the plaintiff is a veteran. The definition of ''veteran'' given in G. L. c. 32, § 1, as appearing in St. 1945, c. 658, § 1, as amended by St. 1950, c. 710, and St. 1951, c. 526, in so far as it is pertinent to our inquiry, is as follows: '' 'Veteran', any person who has *served* in the army, navy, coast guard or marine corps of the United States . . . in time of war or insurrection . . . provided, that no member of the United States coast guard auxiliary and no temporary member of the United States coast guard reserve shall be deemed to be a 'veteran' within the meaning of this definition . . .'' (emphasis supplied).

We are dealing with a statute (c. 32, § 1) enacted in 1945 which defines the word ''veteran'' in terms, so far as material, the same as the definition given to the word ''veteran'' in c. 31, § 21, as amended by St. 1924, c. 155. The

latter granted preference to veterans in obtaining public employment; the former granted a gratuitous benefit to veterans when their public employment ended, under conditions already referred to. They must be construed alike. There are two essential conditions which must be satisfied in order that a person may be classified as a "veteran" and thereby become entitled to the advantages which the applicable statute confers, namely that the person (1) "served in the army, navy, coast guard or marine corps," (2) "in time of war."

We shall consider these conditions in their reverse order. (1) The plaintiff has satisfied the "in time of war" condition. (2) We hold for reasons to be stated that the plaintiff has not "served in the army" in the sense in which the words are used in our statute. The case stated recites: The Enlisted Reserve Corps thus established "was not a constituent part of the Regular Army, but was an independent corps which *could be* assigned to duty with the Regular Army or other component part of the Army of the United States, but which could not be integrated therewith" (emphasis supplied). Regulations were published "concerning the enlistment of medical students in the Enlisted Reserve Corps and their continuance in their college course while subject to call for active service."

The declared purpose of the Enlisted Reserve Corps was to secure "an *additional reserve* of enlisted men for military service" with named technical branches of the army including the Medical Department (39 Stat. 195 [1916]). In substance, the true status of the plaintiff as a member of the Enlisted Reserve Corps was that he was enrolled or enlisted in an organization which had a military purpose and which permitted him to pursue his ordinary civilian life as a student subject to call or order into active service (by the President) or for purposes of instruction or training not to exceed fifteen days in any one calendar year (by the Secretary of War) whereupon he would have certain rights (such as pay, rank and retirement disability) and "be subject to the laws and regulations for the government of the

Army of the United States." 39 Stat. 195, 196. The call into active service or for purposes of instruction or training never came. The plaintiff thus never became "subject to the laws and regulations for the government of the Army of the United States."

In reaching the conclusion that the plaintiff never "served in the army" we are guided in part by the interpretation which this court gave to the word "served" in the case of *Dunn* v. *Commissioner of Civil Serv.* 281 Mass. 376, in 1933, when considering the basic definition of the word "veteran" as it appeared in the veterans' preference statute which is, as noted above, substantially the same as the basic definition of the word "veteran" in the veterans' retirement statute. There this court said at page 380: "We think the Legislature had in mind participation in situations where army, navy and marine corps were engaged in performing the objects for which they were called into being and the individual members were acting their several parts. So understood, service is not necessarily confined to combat with enemy forces. The essential characteristic of the conduct which constituted the basis for the preference given in the line of statutes which we have referred to has been service performed in the army or navy. The beneficiary has been the man who 'served,' not merely one who has been 'mustered in' or 'inducted.'" This conception of the word "served" as used in the veterans' preference statute stood unchallenged for twelve years. We think it applies here. "[W]hen the same legislature, in a later statute, use the terms of an earlier one which has received a judicial construction, that construction is to be given to the later statute. And this is manifestly right. For if it were intended to exclude any known construction of a previous statute, the legal presumption is, that its terms would be so changed as to effect that intention." *Commonwealth* v. *Hartnett,* 3 Gray, 450, 451. See *Whiting*

v. *Board of Pub. Works of Holyoke,* 222 Mass. 22, 24. We adopt the language of the court in the *Dunn* case at page 380 as being peculiarly appropriate to the one before us: "[W]e think our Legislatures in using the word [served] had no intent to recognize such a history as basis for the title of veteran, or as ground for preference in the public service." The fact that the plaintiff "engaged daily in drill" while he was a medical student does not alter the essentials of the case. If enlistment in the Medical Department of the Enlisted Reserve Corps had any significance it was to ensure that the plaintiff could continue his studies at medical school (40 Stat. 397) subject only to the call of the President rather than be subject to the selective draft. See 40 Stat. 557, 558 (1918), and 40 Stat. 955, 956 (1918).

One further point remains. The plaintiff has argued that the proviso excluding members of the Coast Guard Auxiliary and members of the Coast Guard Reserve from being deemed veterans within the definition inferentially means that all other reservists come within the definition. The answer is that the proviso was intended not to modify the basic definition of the word "veteran" by enlarging it but to preclude its application to a class of persons who may have "served." The "word ['Provided'] in common speech naturally expresses a qualification, a limitation, a condition, or an exception respecting the scope and operation of words previously used." *Attorney Gen.* v. *Methuen,* 236 Mass. 564, 573. *Carr* v. *Burke,* 333 Mass. 365, 366–367.

*Order dismissing report affirmed.*