CASPER–ALCOVA IRRIGATION DIS-
TRICT, Appellant (Proponent below),

v.

Harry IRVING and Vista West Home-
owners Association, Appellees
(Protestants below).

Nos. 4901, 4931.

Supreme Court of Wyoming.

Sept. 14, 1978.

George M. Porter, Wehrli & Williams, Casper, for appellant.

Harry E. Leimback, Casper, for appellee, Harry Irving.

Elmer C. Winters, Casper, for appellee Vista West Homeowners Assn.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

The Casper-Alcova Irrigation District contains 22,994 acres of irrigable land, owned by 290 separate owners, whose individual holdings vary from a fraction of one acre to as many as 1800 irrigable acres. For the year 1978, the commissioners of the district attempted to levy a minimum assessment against each owner, regardless of the size of his holding, in the amount of $50.00. Protests were filed against the assessment and following a hearing in the district court of Natrona County this assessment was held illegal. Later, and after the county treasurer had attempted to collect this amount of $50.00 along with other assessments and taxes due from the individual landowners, a supplemental order was entered ordering her not to collect the $50.00 assessment. Separate appeals have been taken from the two orders, but the two matters have been consolidated for disposition by this court.

The issue before us involves the relation of two clauses of § 41–7–403, W.S. 1977, the first of which states that assessments for current expenses of the district

shall be based on irrigable acreage and shall be uniform, while the second clause, a proviso, permits the commissioners in their discretion to provide a minimum annual assessment for current expenses. We consider that the proviso controls the issue here presented and reverse both rulings of the district court.

The district is one formed under applicable Wyoming law for the purpose of furnishing to lands owned by its members water obtained under a contract with the United States government. This water is diverted from Alcova Reservoir in Natrona County, and by means of various ditches, canals and laterals conveyed to lands lying within the district. While originally the district was composed of farms and ranches, suburban development in the area has brought about the division of a part of the lands into smaller tracts, the owners of some of which handle their water rights individually while others have formed an organization known as the Vista West Home Owners Association, representing some 115.2 irrigable acres of land within the district.

Numerous landowners appeared at the hearing before the district judge. No witnesses were sworn nor testimony or other evidence introduced at this or subsequent hearings, but as the transcript of these proceedings shows, after a series of questions by the court to all appearing parties, and their responses, it developed that the sole issue raised was whether the district had the authority as indicated in the budget report and the notice of hearing, to impose a minimum assessment for current expense, or operation and maintenance, "in the amount of $50.00 for each lot, tract and easement of land, which may be separately owned or occupied." Based on their interpretation of the first order which was entered by the court, the district commissioners prepared an assessment roll which included a minimum annual assessment of $54.50 against the first acre or fraction thereof within each separately owned lot, tract or easement of land within the district. This was unsatisfactory to the protestants and they eventually secured entry of an order, in effect disallowing the $50 minimum charge assessed against each owner. Appeal from this order is docketed as case No. 4901.

In the meanwhile the assessment roll, including the $50 charge, had been prepared by the district commissioners and through proper channels forwarded to the county treasurer for collection. Through the county attorney she sought instructions as to what should be done about collecting this and on January 17, 1978 the court entered its further order directing her not to collect the $50 charge. A second notice of appeal was timely filed and this appeal has been docketed herein as No. 4931.

The district assessments are levied and collected pursuant to authority of § 41–7–402, W.S.1977, which directs the district commissioners to prepare and submit to the district court a report showing among other things an itemized estimate of the amount necessary to meet yearly current expenses of the district. The matter is examined by the district judge and an order entered determining the amount of assessments to be levied. Its adjudication is entered in the records of the court and a certified copy thereof becomes the basis of a levy and assessment by the district and board of county commissioners. This assessment is then included in the general tax roll by the county assessor and that document is delivered to the county treasurer who then collects both general taxes and these assessments. This tax roll shows among other things the amount assessed against lot, tract, or easement within the district. The portion of § 41–7–403, W.S.1977 with which we are here concerned reads in pertinent part:

"* * * *All such assessments for current expenses shall be based upon irrigable acreage and shall be uniform* as to irrigable lands receiving the maximum apportionment of water from said district, and as to irrigable lands receiving less than such maximum apportionment such assessment shall bear the same proportion as the amount of water appor-

tioned to such lands bears to the maximum apportionment of water to other lands in such district. *Provided however, that the commissioners of any irrigation district may, in their discretion, provide for a minimum annual assessment for current expense.*" (All emphasis added)

While counsel for the appellees argue that the imposition of a minimum is contrary to the statutory mandate that current expenses be apportioned on the basis of irrigable acreage, they either ignore the effect of the proviso or seek to apply it in a meaningless way. Although it is mentioned in their briefs, there is no real analysis of the effect thereof. Examination of the legislative history of the statute indicates that the full sentence beginning with the words, "Provided however," was inserted by the enactment of Ch. 45, S.L. of Wyoming 1953, the title of which act shows that its sole purpose was to permit the district commissioners of irrigation districts to provide a minimum annual assessment for current expenses. If the minimum assessment must be apportioned to irrigable acreage, it would not change the existing law. Therefore, unless this proviso in some way restricts the statutory language which it follows, there was no reason for its enactment.

In *Wheatland Irrigation District v. Short,* 80 Wyo. 136, 153, 339 P.2d 403, 409 (1959) we recognized that the courts are required to give effect to every part of the statute, and as is said in 82 C.J.S. Statutes § 381 p. 883:

"Generally, a proviso is a clause engrafted on a preceding enactment for the purpose of restraining or modifying the enacting clause, or of excepting something from its operation which otherwise would have been within it, or of excluding some possible ground of misinterpretation of it, as by extending it to cases not intended by the legislature to be brought within its purview. A proviso ordinarily has no existence apart from the provision which it is designed to limit or qualify."

Cases cited by the district as to the meaning of the word "provided" are also pertinent. We agree that as said in In re Liv-

ingston's Estate, 14 A.D.2d 264, 220 N.Y. S.2d 434, 436 (1961), "the words 'provided, however', are deemed to denote the expression of a limitation or. exception" and as said in *Weiner v. City of Boston,* 342 Mass. 67, 172 N.E.2d 96, 100 (1961):

"* * * The 'word ["Provided"] in common speech naturally expresses a qualification, a limitation, a condition, or an exception respecting the scope and operation of words previously used.' *Attorney General v. City of Methuen,* 236 Mass. 564, 573, 129 N.E. 662, 665."

We are asked to hold that the proviso had no effect; that assessments must still be apportioned to the irrigable acreage of the individual water users. We cannot accept that construction and hold that the only reasonable interpretation thereof is that while the irrigable-acre-basis still remains the general guideline in the assessment of current expenses (as well as all other expenses connected with the operation of the district), the 1953 amendment gave to the district commissioners a discretion to fix some minimum charge that would be paid by all water users without such apportionment. The idea is not novel; many utilities have such minimum charges and it has been said thereof that the term

"* * * usually signifies a rate of compensation for the expense and labor of being ready to supply water or electricity or gas, at the will of the customer, even though the supply be not used at all." *Cox v. Abbeville Furniture Factory,* 75 S.C. 48, 54 S.E. 830, 832 (1906).

"In the absence of a statute to the contrary, or of a contract to the contrary or which does not expressly allow a service charge, a public utility may, under proper circumstances, make a reasonable and uniform fixed monthly service charge or, subject to the same qualifications of reasonableness and uniformity, a minimum monthly charge." 64 Am.Jur.2d, Public Utilities, § 47, p. 584.

The record does not show the exact number of small holdings within the district but it is not unreasonable to conclude that like any other entity furnishing utility services

to a number of individuals, while the amount of water, electricity, or gas furnished may vary from customer to customer, there are nevertheless certain charges which are really allocable to the individual owners on a per capita basis. In the case at bar, as to some of the small acreages involved, it would seem that allocation of all current expenses on an irrigable acreage basis would hardly pay the cost of maintaining the customer on the books of the company. There may well be other charges that are proportionate to individual ownership rather than to acreage irrigated. Under the statute, it is within the discretion of the district commissioners to make that minimum assessment.

We call attention to the provisions of § 41–7–301, W.S.1977, to the effect that the district commissioners are public officers, with a presumption in favor of the validity and regularity of their acts. This statute further declares that when anyone questions any report of the commissioners, "the burden of proof shall rest upon the contestant, remonstrater or questioner." Counsel in this case assert that it is unreasonable that the assessment against a small tract is many times the charge per acre to the owner of a large acreage, and we do not say that this may not be the case. We do not attempt to determine the amount which might reasonably be assessed as a minimum charge. We do not consider that the protest was tried or this appeal taken on any such theory. The protestants have not established by any evidence that the commissioners have fraudulently or capriciously applied the authorization we · find given them by the statute. Absent such attack, supported by evidence, we must conclude that the commissioners were given a discretion to fix a minimum assessment, and the amount fixed by them is valid.

We therefore reverse the action of the district court and remand the cause to that court with instructions to approve the assessment roll as submitted by the district.

ROSE, Justice, specially concurring.

While I agree that the district court's judgment must be reversed, the majority opinion leaves with me certain unresolved problems in the construction of § 41–7–403, W.S.1977. The reason for this may be the failure of the appellees to adequately frame their issues on appeal. I agree with the majority that, contrary to the appellees' stated position, the "minimum annual assessment" proviso in the statute does not require an apportionment of current expenses thereunder on the basis of irrigable acreage. I would question, however, the manner in which the irrigation district applied the minimum assessment in this case.

The majority correctly compares the minimum assessment, allowed by the statute, to customary utility charges. It fails, however, to fully apply the analogy to the irrigation district. Here, the irrigation district imposed the minimum assessment *in addition to* the irrigable-acreage assessment. The district established a base charge per irrigable acre, and then determined the amount still needed to balance its budget. This additional dollar-requirement became the basis for the minimum assessment. It is conceivable, under this approach, that the district set the irrigable-acreage assessment at a low rate and placed primary reliance on the minimum assessment. I cannot believe that the legislature intended the minimum-assessment proviso to be used in such a manner, since it would frustrate the underlying irrigable-acre approach. More reasonable would be a conclusion that the legislature intended the minimum assessment to be established in a manner consistent with the way charges are imposed by other utilities. Under those circumstances, the charge would be a lesser-included component of the overall charge, not an add-on, make-up-for-deficits charge. I do not want my agreement with the majority's disposition to embrace an approval of the district's method of additionally assessing landowners with a so-called "minimum assessment" which is, in reality, no minimum at all.