P. J. COADY

*Appellant*

(Plaintiff below)

vs.

RUTH M. BATCHELDER

*Appellee*

(Defendant below)

(No. 2860; February 17, 1959; 335 Pac. (2d) 443)

448

For the appellant, the cause was submitted upon the brief of Ellery, Gray & Hickey of Cheyenne, Wyoming, and oral argument by Norman B. Gray.

For the appellee, the cause was submitted upon the brief of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and oral argument by Bard Ferrall.

Heard before Blume, C. J., and Parker and Harnsberger, JJ.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

General Finance Company, a special partnership, was commenced in 1944 under the laws of the State of Wyoming with two general and four special partners. Its term of existence was to be twenty-five years. In 1945, W. I. Christian and P. J. Coady, the general partners, with the consent of Ruth M. Batchelder, a special partner, bought the interests of the other three special partners. In November 1956, Christian, who died ten months later, sold his interest in the partnership to Coady.

The present action by Coady against Batchelder seeks to have the court declare that the special partnership was dissolved by Christian's sale of his interest to Coady, asks for an accounting from October 1956, and requests a decree which would set over to him the remaining assets of the special partnership upon his paying to Batchelder her capital contribution of $4,000 with interest thereon as provided by the partnership agreement and her share of any undistributed net earnings of the partnership.

The parties stipulated to the facts they considered essential, and the case was submitted to the district

court on briefs. When a judgment was entered dismissing the claim, the plaintiff appealed .

There is only one issue in the case, Did Christian's sale of his interest to Coady ipso facto dissolve the partnership? Appellant claims that it did and relies upon the provisions of § 61-601, W.C.S.1945:

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

He further urges that a change in the relation of partners, such as Christian's withdrawal, dissolved the partnership, citing numerous authorities in an attempt to justify his position. Appellee relies principally upon, and submits authorities purporting to show that the situation is controlled by, the provisions of § 61-504(1), W.C.S.1945:

"(1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."

Appellant's general philosophy regarding the applicable law is disclosed when he says that Christian in order to remove himself from future involvements could have followed any one of three courses: First, he could have served notice on both appellant and appellee of his determination to dissolve the partnership, whereupon it would have been dissolved—the

only consequence being his subjecting himself to damages by either or both of the present parties. Second, he could have applied to the court under § 61-604, W.C.S.1945, for a decree of dissolution on the ground that because of his ill health it was no longer possible for him to carry out his contract. Third, by obtaining the consent of Batchelder to his assignment to Coady, he could, if possible, sell and assign his interest in the partnership to Coady, thereby obtaining his consent, and then withdraw entirely from the partnership.

Appellant urges—without contradiction—that there was legal justification for both the first and second of these possibilities, but he admits that neither was followed, and so devotes his entire argument to an insistence that Christian having followed the third course of action the partnership was legally dissolved and appellant is now placed in a position to proceed with the winding up of the business.

At the inception several matters are both manifest and significant:

(1) In general the provisions of the Uniform Partnership Act, herein called the Act, is controlling in this jurisdiction.[1]

(2) Prior to the approval of the Act, partnership more than any other subject connected with the business law was fraught with uncertainty. 7 U.L.A., Partnership, 1949, p. 3.

---

[1] The Uniform Partnership Act, approved by the Conference of Commissioners on Uniform State Laws in 1914 (now published in 7 U.L.A., Partnership, 1949), was adopted in Wyoming in 1917 (c. 61, arts. 1-6, W.C.S.1945). The sections in issue in this case are identical in the Act and in the Wyoming statutes.

454

(3) The Wyoming partnership statutes adopted were not to be considered as in derogation of common law and subject to strict construction but were to be interpreted and construed so as to effect their general purpose, to make uniform the law of partnership. Section 61-104, W.C.S.1945.

(4) Partnership cases decided in any jurisdiction prior to the adoption of the Act are of slight assistance in the instant litigation because they deal with the common law while we are bound by statute.

Bearing these facts in mind, we consider the arguments of the parties.

Section 61-601 upon which hinges appellant's entire case is treated by his counsel as though it were a special provision divorced from other sections of c. 61, W.C.S.1945, but this may not be. It is an integral part of the chapter and more especially of the article covering dissolution and must be interpreted in pari materia. Accordingly, it is difficult to conceive how the statement that "The dissolution of a partnership is the change in the relation of the partners" should be emphasized to the exclusion of specific "Causes of dissolution" thereafter recited. If reason therefor exists, it would probably have been discussed by other courts. We inquire then into the cases cited by appellant's counsel to ascertain whether they are precedent for holding that under Wyoming statutes "the change in the relation of the partners" per se dissolves the partnership.

He quotes Aitchison v. Anderson, 9 Cir., 183 F.2d 922, 924, as follows:

"It is well recognized in law that where he intends to withdraw from participation in the business a sale

by one of two partners of his rights in the partnership property and his entire interest in the partnership to the remaining partner dissolves the partnership, even though the seller is not thereby relieved of his liabilities to creditors.* * *"

The quoted portion of the opinion addresses itself to a situation where one of two partners withdraws from a partnership, the term of existence of which is unstated, and by footnote cites as support only cases from other jurisdictions which at the time of the decision had not adopted the Act. Therefore, we are reluctant to accord it weight.

Egner v. States Realty Co., 223 Minn. 305, 26 N.W. 2d 464, 468, 170 A.L.R. 500, is cited for the proposition that:

"* * * The uniform partnership act, L.1921, c. 487, § 29, provides that a partnership is dissolved by a 'change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.' Under the statute, the same as prior to its enactment, the withdrawal of a member from a partnership operates to dissolve the partnership.* * *"

This case concerns a situation in which there were only two partners, deals with the rights of a third person against the partnership rather than the rights of the partners between themselves, and does not on its face indicate whether the partnership by its terms was to exist for a fixed period or was terminable at will. Neither do the cases cited by the court for authority of its pronouncement bear scrutiny.

Patrikes v. J.C.H. Service Stations, Inc., 180 Misc. 917, 41 N.Y.S.2d 158, 168, affirmed 180 Misc. 927, 46

N.Y.S.2d 233, is cited as authority for the proposition that:

"When a partner ceases to be associated in the carrying on of the business, so that the relation of the partners is changed, a dissolution is effected for all purposes, except liquidation.* * *"

This case was a suit by partners for the return of money deposited as security for the performance of a lease which plaintiffs claimed was terminated by reason of one of their number having been inducted into the Armed Forces. Several factors weaken the case as precedent in the instant situation, e.g., the term of existence of the partnership is not given, and the court's authority for its pronouncement is not clear. Moreover, it appears that the case turned upon the Soldiers' and Sailors' Civil Relief Act since it held the partner claiming to have entered the service to be relieved of responsibility and therefore entitled to recover although the others of the partnership were not.

Laudeman v. Beyler, 324 Ill.App. 116, 57 N.E.2d 518, 520, is apparently cited by appellant for the proposition that a dissolution as a matter of law occurred upon a partner leaving the business. Actually the court says that "section 31 of the partnership act is applicable." Section 31 of the Illinois law at that time was identical with § 61-603, W.C.S.1945 (causes of dissolution).

Owen v. Wilden Hospital, Inc., 245 Iowa 382, 62 N.W.2d 186; First Nat. Trust & Savings Bank of San Diego v. Industrial Accident Commission, 213 Cal. 322, 2 P.2d 347, 78 A.L.R. 1324; Sandberg v. Scougale, 75 Wash. 313, 134 P. 1051; Fisher v. Grady, 131 Fla. 1, 178 So. 852; Harwell v. Cowan, 175 Ga. 33, 165 S.E. 19; and Traders' & General Ins. Co. v. Emmert, Tex.

Civ.App., 76 S.W.2d 208, claimed to have a bearing on the point in issue, arose in jurisdictions which had not adopted the Act, and hence are of little assistance.

The authorities presented to this court by appellant thus fall short of being persuasive that the ceasing of any partner to be associated with the partnership *ipso facto* dissolves it without reference to "Causes of dissolution" prescribed by our statutes.

We turn then to the argument of appellee that plaintiff's purchase did not dissolve the partnership because of the provisions of § 61-504(1). She relies upon secondary authorities tending toward the view that prior to the adoption of the Act there was a conflict of opinion as to the proposition that a partnership was dissolved by the sale of a partner's interest.[2] However these are general in nature and either cite no cases to substantiate the expressed views or refer to cases from jurisdictions which had not then adopted the Act. Although the cases cited by appellee would seem to hold that the mere conveyance by a partner of his interest does not of itself dissolve the partnership, the facts in each opinion indicate little similarity to the instant situation.

Perhaps the real point of contention in the argument and briefs is appellant's insistence that Christian not only made a "conveyance * * * of his interest" within the provisions of § 61-504(1) but also ceased "to be

---

[2] 1 Barrett & Seago, Partners and Partnerships—Law and Taxation, 1956, p. 332; 2 Barrett & Seago, Partners and Partnerships—Law and Taxation, 1956, pp. 16, 19; Crane on Partnership, 1938, n. 77, p. 342; 40 Am.Jur. Partnership § 244; 68 C.J.S. Partnership § 346, p. 853; and 9 Calif. L. Rev. 206, 223.

458

associated" according to the provisions of § 61-601.

In any event, no cogent or persuasive case precedent has been submitted to us and exhaustive research by us reveals none. We turn then to basic factors which may shed some light.

At 7 U.L.A., Partnership, 1949, p. 160, is found the commissioners' note concerning § 27 of the Act (§ 61-504, W.C.S.1945) :

"In re the subject of this paragraph [subd. 1] see [George, 153; Beale's Parsons, sections 106, 305, 306; Story, sections 272, 377, 308; Bates, sections 158-168, 931-933; Lindley, 397 et seq., 620; Jas. Parsons, section 175; Collyer, 151, 161; Kent, 59]. These authorities on the whole state that the mere assignment dissolves the partnership. Many such assignments, however, are merely by way of collateral security for a loan, the assigning partner in no wise intending to end the partnership relation. If he neglects his personal relation the other partners may dissolve the partnership under section 31 of this act. But the mere fact of assignment without more should not be said in all cases to be an act of dissolution. The change in the existing law follows a similar change of the English law embodied in section 31 of the English Partnership Act."[3]

This clearly indicates the view of the drafters that dissolution should occur under the provisions of § 31 of the Act (§ 61-603, W.C.S.1945). Even if this explanation had not been given, we think the same result would be reached by a consideration of each section of the Act in relation to every other section.

---

[3] A verbatim transcript of the proceedings of the 23 Annual Conference of Commissioners on Uniform State Laws held at Montreal, Province of Quebec, August 26-29, 1913, bears out this note.

We have been interested in a germane analysis of the subject found in Lindley on Partnership, 11 ed., pp. 694, 695 (discussing the English law to which the commissioners' note, supra, referred) :

"The question whether an assignment by a member of an ordinary firm, of his share in it, dissolves it, or gives the other members a right to have it dissolved, has not been much considered in this country.

"Before the Partnership Act, 1890, came into operation it is conceived that where the partnership was at will an assignment and notice thereof operated as a dissolution. But where the partnership was for a definite period, which was not expired, there was more difficulty in arriving at a correct conclusion. If the assignment operated as a dissolution, it would have been competent for a partner to do indirectly what he could not have done directly, *viz.*, dissolve before the expiration of the time for which the partnership was entered into. On the other hand, if the partnership continued, injustice would have been done to the assignor's co-partners. The assignment did not of itself create a partnership between them and the assignee, but it did deprive the assignor of all his interest in the concern, and his co-partners might fairly have urged that they never contemplated a partnership with a person having no interest in it. It seems impossible therefore to deny their right to make the assignment *a ground* for dissolution. * * *" ( Emphasis supplied.)

This presents an equitable aspect of the problem which undoubtedly influenced the framers of the Act. Thus, it is more than coincidence that the statute (§ 27 (1) of the Act; § 61-504 (1), W.C.S.1945) parallels fair dealing.

In the situation before us, Christian, being forced by his serious illness, a circumstance beyond his control, to make some move to dispose of his interests

and eliminate himself from the partnership, had, among others, the three possible courses of action outlined by appellant. Had he chosen the first, served notice upon the parties to the present suit and proceeded with the dissolution, subjecting himself to whatever damages might have been incurred, the court or jury before whom the matter had been tried would surely have taken into consideration the emergency confronting him and tempered the damages accordingly. Christian's condition would likewise probably have influenced the court if a decree had been asked under the authority of § 61-604, appellant's second listed possibility. Instead, Christian chose the method which appellant lists as third, viz., he gave notice to the remaining special partner, assuming her consent to the sale to Coady,[4] and proceeded to effect the transaction. We think this sale did not ipso facto dissolve the partnership. Even though the purchase of Christian's interest may have been in good faith, without ulterior motive, and according to appellant's viewpoint the only practical solution to an unfortunate situation beyond the control of any of the partners, his position in this suit is legally untenable. Of course, this does not deny appellant the right to dissolve the partnership under the statutory provisions; and if he should so request, the court of jurisdiction would undoubtedly give consideration to the exigencies at the time the sale of the interest was made.

Affirmed.

Note: Petition for Rehearing denied April 17, 1959.

---

[4] Paragraph five of appellant's petition alleges consent, and appellee denies the paragraph. The stipulation admits that the two Christian letters were written and received and that "the matters stated in said exhibits are true." One of the letters recites consent from "Batch," but the record does not disclose who he was or his authority.