**BELCO PETROLEUM CORPORATION, Appellant (Petitioner below),**

v.

**The STATE BOARD OF EQUALIZATION for the State of Wyoming, Appellee (Respondent below).**

**No. 4917.**

Supreme Court of Wyoming.

Nov. 24, 1978.

Edwin H. Whitehead of Urbigkit, Mackey & Whitehead, P.C., Cheyenne, on brief and Walter C. Urbigkit, Jr. and Edwin H. Whitehead, Cheyenne, argued for appellant.

V. Frank Mendicino, Atty. Gen., and James D. Douglass, Senior Asst. Atty. Gen., on brief. James D. Douglass, Senior Asst. Atty. Gen., argued for appellee.

Before GUTHRIE, C. J., RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge, Retired.

RAPER, Justice.

This appeal arises from a review by the district court of an administrative hearing conducted by the State Board of Equalization (hereinafter Board), wherein the Board denied any relief to the appellant, Belco Petroleum Company (hereinafter Belco), which company claimed that an increase in the severance tax enacted by the Wyoming Legislature in 1975 could not be applied to Belco's tax liability for the year 1975 because to so apply the increase would be to give the 1975 tax increase an illegal and unconstitutional retroactive effect. The district court affirmed the Board. The issues, as set out by Belco, are:

"(1) The trial court erred in finding the legislature intended that the severance tax imposed by Chapter 125 Session Laws 1975 be levied upon gross production for the preceding year, 1974.

"(2) The fact that § 39–227.1, W.S. (Laws 1974, Ch. 19) was repealed by § 39–227.-1:1 (Laws 1975, Ch. 125) does not preclude the Board from collecting the tax levied by the section of the act repealed by the 1975 enactment.

"(3) The trial court erred in affirming the decision of the Board of Equalization as the Board failed to articulate a rational connection between the facts found and the choice made."

We will affirm.

The tax in question was first imposed in 1969 and was denominated a severance tax, Ch. 193, S.L.Wyo.1969.[1] The provision we

---

1. Ch. 193, S.L.Wyo.1969, in pertinent part:

"Section 1. There is *hereby levied upon the privilege of extracting any* gold, silver and other precious metals, soda, saline, coal, trona, uranium, bentonite, petroleum or other crude mineral oil or natural gas, or other valuable deposit, a severance tax which shall be payable to the Tax Commission of Wyoming, *in an amount equal to six and one-fourth per cent (6¼%) of the value of the gross product extracted.* For the purpose of this act, the value of the gross product shall be the value fixed by the State Board of Equalization pursuant to Section 39–224, Wyoming Statutes 1957, and shall not include gross production otherwise exempt by law.

"Section 2. *The tax levied by the provisions of this act shall be payable to the Tax Commission of Wyoming annually, beginning in 1969,* on the first day of July, and shall be and become delinquent on and after the first day of September. The amount of the tax so payable shall be computed upon the gross production for the preceding calendar year, as described in Section 1 hereof.

"Section 3. Every person, partnership, corporation, company, firm or association of whatever nature, extracting any of the products hereinabove described shall be required to report the gross production for the preceding calendar year, together with such information as shall be requested to determine the value thereof, to the State Board of Equalization not later than the second Monday in February in each and every year, and shall be liable for the payment of the tax assessed thereon.

"Section 4. The State Board of Equalization shall compute the value of the gross production returned, and shall certify the same to the Department of Revenue within

are most concerned with is found in Section 2: "The tax levied * * * shall be payable * * * annually, beginning in 1969, on the first day of July * * * The amount of the tax so payable shall be computed upon the gross production for the preceding calendar year * * *."

The taxing provisions were amended in 1974. Ch. 19, S.L.Wyo.1974.[2] The effect was to retain the tax at the same rate of 1% on stripper wells (wells producing 10 or less barrels per day, § 39–6–301(a)(ii)), § 39–227.1(a), and increase the tax from 1% to 3%

on other oil production, § 39–227.1(b), as far as Belco is concerned. Oil and gas production is the subject matter of this case. The provision of primary concern here is found in § 39–227.2: "The tax levy * * * shall commence as of January 1, 1974 and shall be payable * * * annually, beginning in 1974, on the first day of July * * The amount of the tax so payable shall be computed upon the gross production for the preceding calendar year * * *."

The taxing provisions were again amended in 1975, Chapters 120 and 125, S.L.Wyo.

---

the Tax Commission of Wyoming. The Deparment of Revenue shall compute the amount of tax herein levied, *shall credit the tax of each taxpayer in the amount of fifty-two and one-half (52.5) mills per dollar on the value of all such production required to be returned for taxation* pursuant to the provisions of Section 39–222 through 39–227, Wyoming Statutes 1957, and shall notify each taxpayer of the amount of tax due on or before the first week day in June of each and every year, beginning in the year 1969." (Emphasis added.)

The credit allowed in § 4 in effect reduced the tax to 1%.

2. Ch. 19, S.L.Wyo.1974, in pertinent part:
§ 39–227.1.

"(a) There is hereby levied *an excise tax* which shall be payable to the department of revenue and taxation, in an amount equal to one percent (1%) of the value of the gross product extracted, *upon the privilege of extracting* any gold, silver or other precious metals, soda, saline, uranium, bentonite, and any oil produced from a property or lease whose average daily production, per well, of crude petroleum and petroleum condensates, including natural gas liquids, did not exceed ten (10) barrels per day during the calendar year for which the production was reported, or other valuable deposit; but excepting and excluding from this subsection trona, coal, petroleum, natural gas, oil shale, or any other fossil fuel minerals. 'Average daily production' means the qualified maximum total production of domestic crude petroleum and petroleum condensates, including natural gas liquids, produced from a property during the preceding calendar year, divided by a number equal to the number of calendar days in that year times the number of wells which produced crude petroleum and petroleum condensates including natural gas liquids from that property in that year. To qualify as maximum total production, each well on the property must have been maintained at the maximum feasible rate of production, in accordance with recognized conservation prac-

tices and not significantly curtailed by reason of mechanical failure or other disruption in production.

"(b) There is hereby levied *upon the privilege of extracting* trona, coal, petroleum, natural gas, oil shale or any other fossil fuel minerals, an excise tax which shall be payable to the department of revenue and taxation in an amount equal to three percent (3%) of the value of the gross product extracted. This subsection shall not apply to a property or lease whose average daily production of crude petroleum and petroleum condensates, including natural gas liquids per well, did not exceed ten (10) barrels per day during the preceding calendar year.

"(c) The tax levies provided for in subsections 39–277.1(a) and (b) shall be levied separately and shall not be construed as being cumulative or in addition to the excise tax that would be created by the passage of the constitutional amendment creating the Permanent Wyoming Mineral Trust Fund to be submitted to the electors in the general election to be held in 1974, or to any other excise tax or taxes on extraction of minerals as may be levied by any constitutional or statutory law.

"(d) For the purpose of this act, the value of the gross product shall be the value fixed by the department of revenue and taxation pursuant to section 39–224 of the statutes and shall not include gross production otherwise exempt by law.

"39–227.2. Same; when payable; computation of amount. *The tax levy provided for by this act shall commence as of January 1, 1974 and shall be payable to the department of revenue and taxation of Wyoming annually, beginning in 1974, on the first day of July,* and shall be and become delinquent on and after the first day of September. The amount of the tax so payable shall be computed upon the gross production for the preceding calendar year, as described in section 1 hereof." (Emphasis added.)

1975.[3] The combined effect of § 39–227.-1:1(b) and (c) was to increase the tax to 2% on stripper production and 4% on all other production. Here the provision of principal concern is found in § 39–227.2: "The tax levy provided for by W.S. 39–227.1 through 39–227.11, is payable * * * annually, on July 1 * * * The amount of the tax shall be computed upon the gross production for the preceding calendar year, as described in W.S. 39–227.1."

**3.** Pertinent provisions of Ch. 125, S.L.Wyo. 1975:

§ 39–227.1:1.

"(a) There is hereby levied *an excise tax* payable to the department of revenue and taxation, in an amount equal to two percent (2%) of the value of the gross product extracted, *upon the privilege of extracting* any gold, silver or other precious metals, soda, saline, uranium, bentonite, or other valuable deposit, except trona, coal, petroleum, natural gas, oil shale, or any other fossil fuel minerals.

"(b) There is hereby levied *an excise tax on the privilege of severing* or extracting trona, coal, petroleum, natural gas, oil shale, or any other fossil fuel, of two percent (2%) of the value of the gross product extracted. The proceeds from the tax are payable to the department of revenue and taxation and shall be deposited in the permanent Wyoming mineral trust fund.

"(c) In addition *to the excise tax* provided for in subsection (b) of this section, there is hereby levied *upon the privilege of extracting* trona, coal, petroleum, natural gas, oil shale or any other fossil fuel minerals, an excise tax of two percent (2%) of the value of the gross product extracted. The proceeds from the tax are payable to the department of revenue and taxation and shall be deposited in the general fund. This subsection does not apply to a property or lease whose average daily production of crude petroleum and petroleum condensates, including natural gas liquids per well, did not exceed ten (10) barrels per day during the preceding calendar year. 'Average daily production' means the qualified maximum total production of domestic crude petroleum and petroleum condensates, including natural gas liquids, produced from a property during the preceding calendar year, divided by a number equal to the number of calendar days in that year times the number of wells which produced crude petroleum and petroleum condensates including natural gas liquids from that property in that year. To qualify as maximum total production, each well on the property must have been maintained at the maximum feasible rate of production, in accordance

Belco is engaged in the production of petroleum. The essential facts were stipulated to by Belco and the Board as part of the administrative proceedings before the Board. In compliance with § 39–227.3, W.S.1957, 1975 Cum.Supp.,[4] Belco reported its gross production in Wyoming of oil and gas for 1974 to the Wyoming Department of Revenue and Taxation before the second Monday in February, 1975. Belco's total gas production was 19,071,650 mcf in 1974;

with recognized conservation practices and not significantly curtailed by reason of mechanical failure or other disruption in production.

"(d) For the purpose of this section, the value of the gross product is the value fixed by the department of revenue and taxation pursuant to W.S. 39–224 and does not include gross production otherwise exempt by law."

Section 1, Ch. 120, S.L.Wyo.1975, amended § 39–227.2, in connection with levying a coal tax for impact assistance, to read:

§ 39–227.2.

*"The tax levy provided for by W.S. 39–227.1 through 39–227.11, is payable to the department of revenue and taxation of Wyoming annually, on July 1, and is delinquent if unpaid by September 1. The amount of the tax shall be computed upon the gross production for the preceding calendar year, as described in W.S. 39–227.1."* (Emphasis added.)

Section 4, Ch. 125, S.L.Wyo.1975, makes the act effective immediately upon passage. The enrolled act is dated March 1, 1975—that was date of passage. Approved by the Governor March 5, 1975, Digest House Journal, 1975, p. 394. Section 3, Ch. 120, S.L.Wyo.1975, makes that act also effective immediately upon passage. The enrolled act is also dated March 1, 1975—that was the date of passage. Approved by the Governor March 5, 1975, Digest House Journal, 1975, p. 275.

The legislature, in 1977, did some revising; but, for our purposes, any changes made were immaterial. See § 39–6–301, et seq., W.S.1977.

**4.** § 39–227.3, 1975 Cum.Supp.:

"Every person, partnership, corporation, company, firm or association of whatever nature, extracting any of the products hereinabove described shall be required to report the gross production for the preceding calendar year, together with such information as shall be requested to determine the value thereof, to the department of revenue and taxation not later than the second Monday in February in each and every year, and shall be liable for the payment of the tax assessed thereon."

its total oil production was 1,309,647 barrels in the same year. The Department of Revenue and Taxation computed the value of Belco's reported gross production and, on June 3, 1975, notified Belco of the amount of severance tax due for 1975 on the basis of the reported 1974 production. The excise tax due was calculated as follows:

| | Value of Gross Production | Rate of Taxation | Tax |
|---|---|---|---|
| Oil | $ 1,379,686 (stripper) | 2% | $ 27,593.72 |
| Oil | 7,075,483 | 4% | 283,019.32 |
| Gas | 5,099,211 | 4% | 203,968.44 |
| Total | $13,554,380 | Total | $514,581.48 |

Belco thereupon regularly filed its protest pursuant to § 39–227.5, W.S.1957, 1975 Cum.Supp.[5]

The foregoing statutory history and factual situation gave rise to this litigation. We now proceed to a disposition of the issues. Belco contends that it should have been taxed in 1975 at the rate established by the 1974 legislature which would have resulted in an assessment which it computed to be about $176,000.00 less.

Belco's argument is essentially that in 1969 and in 1974, the legislature specifically stated that the tax in question was to apply to the year in which the enactment was passed; but, in 1975 they failed to specifically provide in the amendment that the increased tax was to be applied to the current tax year. Belco maintains that if the tax was to be applied in 1975, a specific statement to that effect is required in the amendment; and, further, the fact that such language was not used in 1975, when it had been used in 1969 and 1974, is a clear indication that the legislature's intent was that the tax increase was not to be applied in 1975. With that argument and interpretation of statutes then extant, we cannot agree.

The words "there is *hereby* levied an excise tax" appearing in § 39–227.1:1(a) and (b) in the 1975 amendment have significance. When coupled with § 3, Ch. 120, S.L.Wyo.1975, stating, "This act is effective immediately upon passage," there is expressed a clear intent to make the increased tax effective March 1, 1975. (See footnote 3.) Effect must be given to every part of a statute or act. *Wheatland Irrigation Dist. v. Short,* 1959, 80 Wyo. 136, 339 P.2d 403; *Coady v. Batchelder,* 1959, 79 Wyo. 447, 335 P.2d 443, 75 A.L.R.2d 1030. That explains why, in 1975, the legislature amended § 39–227.2 to read, "[t]he tax levy provided for by W.S. 39–227.1 through 39–227.11, is payable * * * annually, on July 1 * * *." That combination of expressions states the same as, "[t]he tax levy provided for by this act shall commence as of January 1, 1974 and shall be payable * * * annually, beginning in 1974, on the 1st day of July * * *," as it appeared in the 1974 act. It also expresses the same direction as "[t]he tax levied by the provisions of this act shall be payable * * * annually, beginning in 1969, on the first day of July * * *." All versions use different combinations of words to reach the same result. Words and phrases used in a statute shall be taken in their ordinary and usual sense. *Johnson v. Safeway Stores, Inc.,* Wyo.1977, 568 P.2d 908.

Belco contends that in 1975 the legislative "enactment contains no dates, contains no statement, no suggestion that the Legislature intended that its application be retroactive." We note no authority in appellant's brief, and we have found no pertinent authority, that requires such specific dates to be placed in the statute. If it can be determined from the plain words of the

**5.** § 39–227.5, 1975 Cum.Supp.:

"Every taxpayer who shall feel aggrieved by the valuation and tax levied by this act [§§ 39–227.1 to 39–227.11] shall have the right of appeal therefrom to the state board of equalization, but such appeal shall not relieve the taxpayer from paying the tax assessed by the department of revenue and taxation of Wyoming under this act as the same shall become due and payable, provided that the payment of such tax under appeal shall not invalidate or nullify the protest. Any excess tax found to have been paid, whether as the result of appeal or erroneous assessment, shall be refunded to the person paying said tax. No restraining order or injunction shall be granted or issued by any court or judge to restrain or enjoin the collection of any tax, interest, or penalty imposed pursuant to this act."

statute when it is to become operative, such dates or statements would be helpful perhaps, but cannot be raised to the level of an absolute requirement. Much of the authority cited by Belco, as well as other authority we have found, places special importance on a statement by the legislature that the tax is to be effective on a given date for a given tax year. What Belco fails to take into account is the fact that in those cases the taxes were clearly retroactive. *Estate of Kennett v. State*, 1975, 115 N.H. 50, 333 A.2d 452; *Philadelphia Life Ins. Co. v. Commonwealth*, 1973, 454 Pa. 157, 309 A.2d 811; *Mecham v. State Tax Commission*, 1966, 17 Utah 2d 321, 410 P.2d 1008; *Shirks Motor Exp. Corp. v. Messner*, 1953, 375 Pa. 450, 100 A.2d 913; *Milliken v. United States*, 1931, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809; *Welch v. Henry*, supra; *Untermyer v. Anderson*, 1928, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; *Brushaber v. Union Pacific RR Co.*, 1916, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493. This has great importance because we will hold that the tax in question is not retroactive insofar as it utilizes antecedent facts for its operation. What is important with regard to this specific argument is that the tax was effective March 1, 1975. The statute is very clear in its language that the tax is payable on July 1 annually. (See footnote 3.)

■ Belco correctly points out that as a general rule tax measures, as well as other statutes, will be construed prospectively only if there is a doubt whether the statute was intended to be retroactive. Cooley, Taxation, Vol. 2, § 513 (4th Ed., 1924); *Bemis v. Texaco, Inc.*, Wyo.1965, 400 P.2d 529, rehearing denied 401 P.2d 708; *State ex rel. Lynch v. Board of County Commissioners*, 1956, 75 Wyo. 435, 296 P.2d 986; *Mustanen v. Diamond Coal and Coke Co.*, 1936, 50 Wyo. 462, 62 P.2d 287.[6] Further, as a general rule, revenue laws will be

construed in favor of the taxpayer if they are ambiguous or doubtful. *Kelsey v. Taft*, 1953, 72 Wyo. 210, 263 P.2d 135, 138; *Equitable Life Assurance Society of the United States v. Thulemeyer*, 1935, 49 Wyo. 63, 52 P.2d 1223. However, these rules of statutory construction are not applicable here.

■ We find the 1975 amendment has no retroactive effect whatsoever; rather, it is prospective. The tax is not levied upon the preceding year's production, and that production is not called upon to bear the burden of the tax. The tax is not an ad valorem tax.[7] The statute is very plain in stating that it is an excise tax laid upon the present and continuing *privilege* of extracting minerals. The value of the privilege is measured by applying a certain percentage figure to the gross production of the previous year. A statute is not necessarily retroactive because it draws on antecedent facts for its operation. *John McShain, Inc. v. District of Columbia*, 1953, 92 U.S.App.D.C. 358, 205 F.2d 882, 883; *Neild v. District of Columbia*, 1940, 71 U.S.App.D.C. 306, 110 F.2d 246, 253–254; *Bates v. McLeod*, 1941, 11 Wash.2d 648, 120 P.2d 472, 475.

In concluding that the statute is not retroactive, we agree with the reasoning utilized in *Neild v. District of Columbia*, supra, at 71 U.S.App.D.C. 314, 110 F.2d 254:

" * * * As the tax in the present case was imposed upon the privilege of engaging in business in the District of Columbia during the year 1937–1938, the question to be decided, therefore, is merely whether the reference to gross receipts during 1936 constitutes a proper measure to be applied in determining the amount of the tax to be paid for that privilege. In our view the language of the statute, read as a whole, clearly shows that the reference was solely for that purpose, and consequently does not make the Act retroactive. The rule is well settled that

---

**6.** Even though we decide this is not a retroactive tax, we note without deciding, that the general rule appears to be that the legislature may enact retroactive tax measures in the absence of a constitutional or statutory bar. *Welch v. Henry*, 1938, 305 U.S. 134, 59 S.Ct.

.121, 83 L.Ed. 87; Cooley, Taxation, Vol. 2, § 516 (4th Ed., 1924).

**7.** See *Miller v. Buck Creek Oil Co.*, 1928, 38 Wyo. 505, 269 P. 43, where the gross product of oil production was taxed on its value on the basis of the current mill levy.

unless the contrary plainly appears a statute operates prospectively only; in other words, 'that a statute ought not to be construed to operate retrospectively in the absence of clear, strong, and imperative language commanding it;' and if a double sense is possible that which rejects retroactive operation must be selected." (Footnotes omitted.)

See also, 2 Sutherland, Statutory Construction, § 41.04.

■ There is no ambiguity in the statute. It clearly imposes a present tax which is measured by an antecedent fact. Numerous courts have found such taxes to be proper. *Tower Plaza Investments Limited v. DeWitt,* 1973, 109 Ariz. 248, 508 P.2d 324, 326; *State v. J. C. Maguire Construction Co.,* 1942, 113 Mont. 324, 125 P.2d 433, 436–439; *State ex rel. Smrha v. General American Life Insurance Co.,* 1937, 132 Neb. 520, 272 N.W. 555, 558–559; *City Investments v. Johnson,* 1939, 6 Cal.2d 150, 56 P.2d 939, 940; *Continental Oil Co. v. Walker,* 9th Cir. 1923, 285 F. 729, 731. Although reports of gross production which are used in computing the tax must be submitted to the Department of Revenue and Taxation by the second Monday in February, a taxpayer has no vested right in a tax rate for a previous year, even though the change in the tax rate is enacted in the current year. The tax is levied on a current and continuing privilege. *Fullerton Oil Co. v. Johnson,* 1934, 2 Cal.2d 162, 39 P.2d 796, 802, is very persuasive on this question:

"The last contention of respondent is equally without merit. Respondent points out that prior to the 1931 amendment to section 8(g) it could compute its depletion allowance on the basis of the 1928 values of its properties, and that since that amendment it is deprived of that privilege. Respondent also points out that under section 2 of the act the tax for any year is computed upon the basis of the net income for the previous year. Section 4 of the act provides that taxes for the current year 'shall accrue on the first day after the close of the "taxable year,"' which taxable year, in respondent's case, corresponds with the calendar year. It therefore follows that respondent's 1931 tax 'accrued' on January 1, 1931, and was computed upon the net income for 1930. The tax, although accruing on January 1, 1931, was not payable until March 15, 1931, under section 23 of the act, and under section 29 the tax became a lien on the first Monday in March, 1931. Under the provisions of section 13 of the act, the taxpayer any time between January 1 and March 15 can file his return. The 1931 amendment to section 8(g) changing the method of computation became effective February 27, 1931.

"Based on these sections, respondent contends that since its tax for 1931 accrued on January 1, 1931, based on its net income for 1930, at which time 1928 values could be used in computing depletion, the 1931 amendment denying that privilege cannot be used to compute the 1931 tax. To permit the February 27, 1931, amendment to apply in computing the 1931 tax, according to respondent, would be to give that amendment an unlawful retroactive effect. Respondent strenuously contends that its tax liability for 1931 became a determined and accrued liability before the effective date of the amendment. To this contention there is a conclusive answer. The retroactivity alleged is more apparent than real. If the 1931 amendment be applied in computing the 1931 tax, such application is to give the amendment a prospective rather than a retroactive operation. Although under the act the net income earned in 1930 is used as a base for computing the tax due for 1931, the tax collected in 1931 is not for the privilege of doing business in 1930 but is a tax for the privilege of doing business as a corporation in California for 1931. It is a tax for the privilege of exercising a corporate franchise for the entire year 1931—that is the current year when the act here involved became effective. The privilege being taxed is a present and continuing privilege, the amount of the tax being measured by the transactions of a prior year. Although,

under the act, the tax accrued on January 1, 1931 and became a lien on the first Monday in March, 1931, the tax imposed for that year was for the entire current year. There is no reasonable or legal basis for contending that a taxpayer is entitled, regardless of legislative action, to have current taxes computed on the same basis as past taxes have been assessed. It is well settled that taxes for the current year may be changed any time during the year, and, in fact, additional taxes may be imposed during the current year on the same subject of taxation. *Continental Oil Co. v. Walker* (C.C.A.) 285 F. 729; *People ex rel. Conn. Mutual Life Ins. Co. v. Kelsey,* 116 App. Div. 97, 101 N.Y.S. 902, affirmed 188 N.Y. 541, 80 N.E. 1116; *American Refrigerator Transit Co. v. Adams,* 28 Colo. 119, 63 P. 410; *Milliken v. U. S.,* 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809."

Compare: *Lakengren, Inc. v. Kosydar,* 1975, 44 Ohio St.2d 199, 339 N.E.2d 814, 817.

 Belco also contends that the statute is a burden upon contractual rights in derogation of Article I, § 10 of the Constitution of the United States and Article I, § 35 of the Wyoming Constitution.[8] The Board refused to pass upon any constitutional questions and proceeded upon a presumption of constitutionality.[9] The Board was correct in its conclusion of law that there is a presumption of constitutionality. *Sanchez v. State,* Wyo.1977, 567 P.2d 270; *Budd v. Bishop,* Wyo.1975, 543 P.2d 368; *State v. Stern,* Wyo.1974, 526 P.2d 344. And, when the question receives judicial attention, a party urging that a statute is unconstitutional must demonstrate that the unconstitutionality is clear beyond a reasonable doubt. *Nehring v. Russell,* Wyo.1978, 582 P.2d 67. Belco has not carried its burden.

This issue is frequently raised in cases challenging tax statutes. It has been said that seldom, if ever, does the imposition of a new tax, or an increase in the rate of an old one, impair the obligation of a preexisting contract. *John McShain, Inc. v. District of Columbia,* supra at 205 F.2d 883; 2 Sutherland Statutory Construction, § 41.07 (4th Ed., 1973); *Barwise v. Sheppard,* 1936, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23. Here the statute in question neither purports to affect any contractual rights of Belco nor does its operation have any direct effect on any contract. *Tower Plaza Investments Limited v. DeWitt,* supra at 508 P.2d 328–330. We will agree that Belco probably could not foresee the imposition of the 1975 increase in the mine products tax. But this fact alone cannot afford relief. *United States v. Manufacturers Nat'l. Bank of Detroit,* 1960, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158; *Philadelphia Life Insurance Co. v. Commonwealth,* supra.

We cannot decide in this case, what effect our decision may have on the interests of others in the oil and gas production of Belco. They are not parties to this action nor are their contracts with Belco in evidence. Belco cites *Miller v. Buck Creek Oil Co.,* supra, footnote 7, in which this court held that each party to a lease involving oil production was liable for the tax on his share in the absence of an agreement. Belco then further cites us to §§ 39–227.7 and 39–227.9, W.S.1957, 1975 Cum.Supp.[10] creat-

---

8. Section 10, Art. I, United States Constitution:
 "No State shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts * * *."
 Section 35, Art. I, Wyoming Constitution:
 "No ex post facto law, nor any law impairing the obligation of contracts, shall ever be made."

9. Conclusions of law by the Board:
 "1. Protestant has raised in this matter various constitutional issues. The Board, an administrative agency, may not properly determine constitutional questions and, specifical-

ly, will not determine the constitutionality of any Wyoming statute.
 "2. The statutes questioned by Protestant shall be assumed and presumed by the Board to be constitutional and valid until a judicial declaration to the contrary."

10. § 39–227.7:
 "Any person upon which a tax is imposed by this act [§§ 39–227.1 to 39–227.11] for extracting any of the products referred to shall have the right and be empowered to deduct the tax so paid from any amounts due or to become due to the interest owners of such products in proportion to the interest

ing a right in the person extracting oil and gas to deduct the tax from amounts due interest holders and making interest holders liable for each of their shares until the tax is paid. The point they make is that burdens are created when the tax has been computed at the 1974 rate and distribution made to interest holders on that basis, because of the adjustments necessary due to the 1975 increase based on 1974 production.

We see no difference between the burden created in 1975 and that created in 1974 when the 1969 tax was increased or the burden created by the 1969 act when a new severance tax was created where there had been none before. While Belco hesitates to concede the validity of the 1974 increase, it rests the weight of its position on the fact that the legislature failed to word § 39–227.2 with an effective date within its language in the same way the legislatures of 1969 and 1974 did.

■■■ Belco also contends that the trial court erred in affirming the decision of the Board, because the Board failed to articulate a rational connection between the facts found and the choice made. The trial court noted, and the record is plain, that this matter was submitted to the Board upon stipulated facts. The findings of fact and conclusions were adequate. The agency, the district court and this court need only know the 1974 production and then apply the 1975 statutory percentages. We do not understand Belco's assertion that facts are lacking when the Board, within its order, adopted by reference all the facts to which Belco stipulated and no others were asserted.

However, Belco insists that under our decision in *Larsen v. Oil & Gas Conservation Commission of Wyoming*, Wyo.1977, 569 P.2d 87, that it was impossible for the district court to determine the issues raised because there were not detailed findings of fact on all the material issues raised before the Board. The trial judge noted that the Board apparently failed to respond to the contentions of Belco related to the retroactive application of the tax. However, he went on to take notice that a response had "generally come in the brief and arguments in behalf of the State by the Assistant Attorney General representing the State Board of Equalization." Of special concern in this regard was the authority of the Board under § 39–43.8, W.S.1957, 1975 Cum. Supp.[11] to:

"(iv) Decide all questions that may arise with reference to the construction of any statute affecting the assessment, levy and collection of taxes * * *."

The trial court noted the decision of the United States Supreme Court that a decision of less than ideal clarity will be upheld if the agency's path may be reasonably discerned. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 1974, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447. The district court added:

"In this case it would appear to the Court that although the agency has not addressed the constitutional issues raised by petitioner, never-the-less, in view of the detailed Memorandums filed by counsel the Court is able to discern the position of the agency with sufficient clarity to proceed * * * In short, this case involves the application of the severance tax law of the State of Wyoming."

We agree with the district court.

■■■ The record reveals that, although the Board declined to decide the constitutionality of the tax law as it was applied by the Department of Revenue and Taxation,

ownership thereof." (First enacted as § 7, Ch. 193, S.L.Wyo.1969; now § 39–6–304(e), W.S.1977.)

§ 39–227.9:
"Any person extracting products under this act [§§ 39–227.1 to 39–227.11], and every person owning an interest in said products to the extent of their interest ownership shall be liable for the payment of the tax imposed by this act, together with any and all penalties and interest, and the tax shall be and become a lien upon the interest of any owner and the interest of any person extracting any such products from and after the time the same are extracted until the tax is paid thereon." (First enacted as § 9, Ch. 193, S.L.Wyo.1969; now § 39–6–307(d), W.S.1977.)

11. Now § 39–1–304, W.S.1977.

the Board did decide that the valuation and assessment, as made by the Department of Revenue and Taxation, was proper under the 1975 amendment. This was all the Board could properly do. We hold that an administrative agency has no authority to determine the constitutionality of a statute. *Yakima County Clean Air Authority v. Glascam Builders, Inc.,* 1975, 85 Wash.2d 255, 534 P.2d 33, 34; *Flint River Mills v. Henry,* 1975, 234 Ga. 385, 216 S.E.2d 895, 896–897; *Herrick v. Kosydar,* 1975, 44 Ohio St.2d 128, 339 N.E.2d 626, 628; *Bare v. Gorton,* 1974, 84 Wash.2d 380, 526 P.2d 379; *Kunzig v. Liquor Control Commission,* 1950, 327 Mich. 474, 42 N.W.2d 247; *Central Ohio Cooperative Milk Producers, Inc. v. Glander,* Ohio BTA 1949, 92 N.E.2d 834; *Montana Chapter of Association of Civilian Technicians, Inc. v. Young,* 9th Cir. 1975, 514 F.2d 1165, 1167; *Finnerty v. Cowen,* 2nd Cir. 1974, 508 F.2d 979, 982; *Downen v. Warner,* 9th Cir. 1973, 481 F.2d 642, 643; *Simpson v. Laprade,* U.S.D.C., W.D.Va.1965, 248 F.Supp. 399, 401; *Panitz v. District of Columbia,* 1940, 72 App.D.C. 131, 112 F.2d 39; 3 K. Davis, Administrative Law Treatise, § 20.04 (1958). This is so whether the question is the constitutionality of the statute per se or the constitutionality of the statute as applied. Here the Board decided that the statute had been properly applied. If that application was unconstitutional, it was a judicial question to be decided on appeal or in some other appropriate judicial proceeding, such as action for declaratory judgment. We agree with the district court that the position of the agency was sufficiently clear so that the district court could proceed with review as we have done here.

We hold that the 1975 amendment to the severance tax statute is plain and unambiguous. By its very words, it is not retroactive in fact or in application. The Wyoming State Board of Equalization properly determined that the tax increase was applicable in 1975, and the district court properly affirmed the Board's decision in that regard.

Affirmed.