AMOCO PRODUCTION COMPANY, Rocky Mountain Oil and Gas Association (R.M.O.G.A.), acting through its Wyoming Division, the Petroleum Association of Wyoming; Champlin Petroleum Company; Chevron USA, Inc.; Gulf Oil Corporation; Marathon Oil Company; Mountain Fuel Supply Company; Wexpro Company; True Oil Company; Burton Hawkes, Inc.; Kirkwood Oil and Gas; Edward M. Boland; Steve C. Champlin; Robert E. Hudson; and Douglas R. Dow, Appellants (Petitioners),

v.

R. A. HAKALA, Rudolph G. Anselmi and Doran Lummis, acting as the Wyoming State Board of Equalization, Wyoming State Tax Commission; and James E. Petry, Director of Revenue of the Department of Revenue and Taxation, Appellees (Respondents).

No. 5621.

Supreme Court of Wyoming.

May 7, 1982.

John A. Sundahl and Julie Nye Tiedeken of Godfrey & Sundahl, Cheyenne, for appellant Amoco Production Co.

W. H. Brown and Claude W. Martin of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellants Rocky Mountain Oil and Gas Ass'n, acting through its Wyoming Division, the Petroleum Ass'n of Wyoming, Champlin Petroleum Co., Chevron USA, Inc., Gulf Oil Corp., Marathon Oil Co., Mountain Fuel Supply Co., Wexpro Co., True Oil Co., Burton/Hawkes, Inc., Kirkwood Oil and Gas, Edward M. Boland, Steve C. Champlin, Robert E. Hudson, and Douglas R. Dow.

Steven F. Freudenthal, Atty. Gen., and Ron Arnold, Asst. Atty. Gen., Cheyenne, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

This is an appeal from a district court order affirming an interpretive ruling by the Board of Equalization (Board) that § 39–6–302(g), W.S.1977, Cum.Supp.1981, should be computed on oil and gas production from and after January 1, 1981.

We will affirm.

Under § 39–6–302(a) and (b), W.S.1977, appellants were paying a severance tax of four percent on petroleum extraction. On February 28, 1981, the Governor signed an act to increase the severance tax on oil and gas by two percent. The act became Enrolled Act No. 34, now codified as § 39–6–302(g), W.S.1977, Cum.Supp.1981:

"(g) In addition to other excise taxes provided by this section there is levied a tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting oil and gas."

Chapter 49, Section 2, S.L.Wyo.1981, provided that the amendment was to become "effective immediately upon completion of all acts necessary for a bill to become law as provided by Article 4, Section 8 of the Wyoming Constitution," which in this case was February 28, 1981, the day the Governor signed the bill.

The Board issued an interpretive ruling that the increased severance tax should be assessed for the months of January and February. Amoco and the other appellants petitioned the Board to reconsider its ruling. The Board held a hearing and denied petitioners' motions to reconsider. Amoco paid the tax in April, 1981, including the additional two percent for January and February, which it paid under protest. Amoco and the other appellants appeal from the district court order affirming the Board's action.

Appellants argue that under the plain wording of the act, the increase in severance tax was not to become effective until March 1, 1981, the first full day after the Governor had signed the act into law, and that to assess a tax measured by production figures for January and February was to apply the act retroactively. The Board argues that the tax levied for January and February is not a retroactive tax under *Belco Petroleum Corporation v. State Board of Equalization*, Wyo., 587 P.2d 204 (1978) (hereinafter cited as Belco Petroleum).

A summary of the statutes and the changes which have been made in them is necessary to understand appellants' argument. The statute interpreted in Belco Petroleum was § 39–227.2, W.S.1957, Cum. Supp.1975, which said:

"The tax levy provided for by W.S. 39–227.1 through 39–227.11, is payable * * * annually, on July 1 * * *. The amount of the tax shall be computed upon the gross production *for the preceding calendar year*, as described in W.S. 39–227.1." (Emphasis added.)

W.S. 39–227.1 was repealed by Chapter 125, Section 3, S.L.Wyo.1975. Section 39–227. 1:1, W.S.1957, Cum.Supp.1975, was its substitute. Section 39–227.1:1, supra, read in pertinent part:

"(b) There is hereby levied an excise tax on the privilege of severing or extracting * * * petroleum * * * of two percent (2%) of the value of the gross product extracted. * * *

"(c) In addition to the excise tax provided for in subsection (b) * * * there is hereby levied upon the privilege of extracting * * * petroleum * * * an excise tax of two percent (2%) of the value of the gross product extracted. * * *

"(d) .* * * [T]he value of the gross product is the value fixed by the department of revenue and taxation pursuant to W.S. 39–224 * * *."

Section 39–224, W.S.1957, Cum.Supp.1975, said that based upon certain information, the Department of Revenue and Taxation would annually fix the value of the gross product after the production process was completed.

The 1975 statute interpreted in Belco Petroleum was an amended statute which increased the severance tax on oil and gas. The petroleum company claimed that an increase in the severance tax enacted by the legislature in 1975 could not be applied to the company's tax liability for the year 1975, because application of the increase would have an unconstitutional retroactive effect. There, the increased tax was effective on March 1, 1975. The tax was payable in July, 1975; but the amount of the tax was based on production figures for 1974, which led to the assertion of retroactivity. We found that the tax was not retroactive.

In 1977, the legislature enacted a new Article 3 entitled "Mine Products Taxes." Section 39–6–302(a) and (b), W.S.1977, which is still in effect, established the taxes on oil and gas.

"(a) There is levied an excise tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting * * * petroleum, natural gas, oil shale or any other fossil fuel in the state. * * *

"(b) In addition to the excise tax imposed by subsection (a) of this section there is levied an excise tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting any valuable deposit in the state except stripper production. * * * "

Section 39–6–304(a), W.S.1977, which has now been amended once again, used to provide:

"The department shall compute the value of the gross production returned for the *preceding calendar year*, shall compute the amount of tax levied and shall notify each taxpayer of the amount due on or before the first weekday in July." (Emphasis added.)

Section 39–6–304(b), W.S.1977, provided that those taxes were due on the first day of August. Section 39–6–301(a)(iii), W.S. 1977, defined "value of the gross product" as:

" * * * the valuation of the gross product *for the preceding calendar year* of all mines and mining claims as determined pursuant to W.S. 39–2–202;" (Emphasis added.)

In 1980, the legislature again amended several of the statutes pertaining to mineral taxes. Section 39–6–301(a)(iii), W.S.1977, Cum.Supp.1981, redefined "value of the gross product" as:

" * * * the valuation of the gross product *for the preceding calendar quarter* of all mines and mining claims as calculated on the same basis as is prescribed by W.S. 39–2–202 for determination by the department of the value of the gross product for the preceding calendar year;" (Emphasis added.)

Section 39–6–304(a) and (b), W.S.1977, became § 39–6–304(a)(i), (ii), (iii), and (iv), W.S.1977, Cum.Supp.1980, setting the due dates for all severance taxes to provide that four tax payments be made each year, each payment being based on the preceding calendar quarter's production:

"(i) On or before May 1 for production during the first quarter of the current calendar year;

"(ii) On or before August 1 for production during the second quarter of the current calendar year;

"(iii) On or before November 1 for production during the third quarter of the current calendar year; and

"(iv) On or before March 1 for production during the fourth quarter of the preceding calendar year."

Appellants seem to be saying that because § 39–6–304(a) was changed in 1980 and now provides that each taxpayer shall remit tax payments four times a year to the Department and that the payment shall be determined based on actual production during the preceding calendar quarter, that the tax is now levied on the current year's production, and that since the tax is now levied on production, the imposition of the additional two percent tax for January and February is retroactive. It is true that the tax which is ultimately assessed for a year is now measured by that year's production, although somewhat indirectly. The payments collected four times a year are measured by the preceding calendar quarter's production, but the final assessment is measured by the entire year's gross production figures. The Department, on or before May 15, 1982, will arrive at a final computation of the taxes which should have been paid for 1981 using production figures from 1981. Section 39–6–304(d), W.S.1977, Cum. Supp.1981, now provides:

"On or before May 15 of each year beginning with the year 1982 based upon information received pursuant to W.S. 39–2–201, 39–2–202 and 39–6–304(a), the department shall determine the amount of the gross production returned for the *preceding calendar year*, shall compute the amount of tax liability and shall credit the amount paid under W.S. 39–6–304(a) * * *." (Emphasis added.)

A look at the operation of the statute as it applies to appellant Amoco might be helpful:

1. On April 29, 1981, (on or before May 1, 1981) Amoco made a tax payment, which payment was based on production figures for the first calendar quarter of 1981, which was the preceding calendar quarter;

2. On or before August 1, 1981, Amoco had to make another tax payment which payment was based on production figures for the second calendar quarter of 1981, which was the preceding calendar quarter;

3. On or before November 1, 1981, Amoco had to make another tax payment, which payment was based on production figures for the third calendar quarter of 1981, which was the preceding calendar quarter;

4. On or before March 1, 1982, Amoco had to make another tax payment, which payment was based on production figures for the fourth calendar quarter of 1981, which was the preceding quarter; and

5. On or before May 15, 1982, the Department will determine the amount of the gross production of Amoco for 1981, will compute the amount of tax liability for 1981, and will then credit the amounts paid from the previous four payments by Amoco. The Department will advise Amoco of any taxes that may still be due and owing; or if Amoco has paid too much, the Department will make a refund to Amoco.

■ What we said in Belco Petroleum, therefore, applies with more force here:

" ' * * * The retroactivity alleged is more apparent than real. If the 1931 amendment be applied in computing the 1931 tax, such application is to give the amendment a prospective rather than a retroactive operation. * * * ' " 587 P.2d at 211.

Eventually, then, 1981 figures are used to assess the ultimate 1981 tax liability, so that appellants have less complaint here about retroactivity than did the appellants in Belco Petroleum. As we said there, a statute is not necessarily retroactive because it draws on antecedent facts for its operation. Here, the tax which is assessed quarterly does use antecedent facts, the production figures for the preceding calendar quarter. The entire year's production figures are then used to assess the ultimate tax liability for the year.

Appellants proceed to argue that since the tax is now ultimately measured using current production figures, the statute establishing the tax indicates a legislative intent that current production be called upon to bear the burden of the tax. This argument is erroneous. The tax is ultimately measured by the current year's production, but the production does not bear the burden of the tax; rather, the privilege of extracting or severing petroleum bears

the burden of the tax. Section 39–6–302(a), W.S.1977, says that the tax levied is "an excise tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting * * * petroleum * * *." Section 39–6–302(g), W.S.1977, Cum.Supp.1981, says, "In addition to other excise taxes * * * there is levied a tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting oil and gas."

 In interpreting statutes, we look first to the language of the statute. *McGuire v. McGuire*, Wyo., 608 P.2d 1278, 1285 (1980). If the statutory language is clear and unambiguous, we will not look at statutory rules of construction, nor will we attribute another meaning to the statute. *Estate of Reno*, Wyo., 604 P.2d 550 (1979). We will give the statute effect according to its plain and obvious meaning. Regardless of the fact that the tax is now remitted four times a year based on the preceding calendar quarter's production, it is still an excise tax on the present and continuing privilege of extracting minerals, not a retroactive tax on production. The additional two percent tax to which appellants object is also an excise tax, not a tax on production. What we said in *Belco Petroleum* again applies:

> " * * * [T]he * * * amendment has no retroactive effect whatsoever; rather, it is prospective. The tax is not levied upon the preceding year's production, and that production is not called upon to bear the burden of the tax. The tax is not an ad valorem tax. The statute is very plain in stating that it is an excise tax laid upon the present and continuing *privilege* of extracting minerals. The value of the privilege is measured by applying a certain percentage figure to the gross production of the previous year. * * * " 587 P.2d at 210.

 The tax is not levied upon production. The statute plainly and unambiguous-

ly states that it is an excise tax laid upon the present continuing privilege of extracting minerals for a year, the value of which privilege is first measured by applying an additional two percent figure to the gross production figures of the preceding calendar quarter, and eventually measured by applying the additional two percent figure to the gross production figures for the entire year.

Appellants next contend that since the statute operates retroactively, it violates the due process clauses of the United States and Wyoming Constitutions, and is an unlawful bill of attainder. Since there is no retroactive application and since there was certainly no legislative intent to turn the excise tax on the privilege of severing or extracting minerals into an ad valorem tax on production, we affirm.

ROONEY, Justice, dissenting.

I do not believe that *Belco Petroleum Corporation v. State Board of Equalization*, Wyo., 587 P.2d 204 (1978) (hereinafter referred to as *Belco* )[1] is dispositive of this case. The situations in the two cases are not similar.

*Belco* held that an excise tax for the privilege of extracting certain minerals during the current calendar year could properly be measured or computed on the basis of the gross production for the preceding calendar year. It noted that a "statute is not necessarily retroactive because it draws on antecedent facts for its operation." *Belco*, supra, 587 P.2d at 210.

In this case, the statute draws on present, not antecedent, facts for its operation. The tax is assessed and paid in the current calendar year on the basis of the current calendar year's production.

> " * * * [E]ach taxpayer * * * shall remit quarterly tax payments to the department. The payment shall be determined by the taxpayer *based on actual production during the quarter* * * *." (Empha-

---

1. I do not comment on the propriety of *Belco*, and I accept its holding for the purposes of this dissent.

sis added.) Section 39–6–304(a), W.S. 1977, Cum.Supp.1981.

It should be recognized that appellants are not challenging, in any way, the assessment of previously imposed excise taxes, or the new quarterly time table for collection of such previously imposed taxes, and they are not challenging the quarterly time table for collection of the newly imposed two percent (2%) tax. The only challenge is to the retroactive imposition of the new tax for the months of January and February 1981—before the law imposing the same became effective on February 28, 1981. " * * * [A]s a general rule tax measures, as well as other statutes, will be construed prospectively only if there is a doubt whether the statute was intended to be retroactive. [Citations.] Further, as a general rule, revenue laws will be construed in favor of the taxpayer if they are ambiguous or doubtful. [Citations.] * * * " *Belco*, supra, 587 P.2d at 210.

The situation in this case must be measured in accordance with such law. Such law must receive more than lip service. Fair is fair and equity is equity.

The provision enacted in 1981 and which became effective at the end of February 1981, now challenged by appellants, reads:

"In addition to other excise taxes provided by this section there is levied a tax of two percent (2%) of the value of the gross product extracted upon the privilege of severing or extracting oil and gas." Section 39–6–302(g), W.S.1977, Cum.Supp. 1981.

The provision did not operate retroactively upon the privilege as it was exercised before the effective date of the act.

I believe a distinction must be made between: (1) the activity upon which the tax is assessed, i.e., the privilege of extracting the minerals, and (2) the measure by which the tax is computed. In *Belco*, supra, it could be said that the wording of the enactment made possible the conclusion that the activity assessed was a privilege of extracting minerals during the current calendar year—a prospective application, and the measure by which the tax is computed was

the gross production during the preceding calendar year—antecedent facts but not retroactive operation of the privilege. The tax was a yearly privilege, collected in the calendar year for which the privilege was granted, but based on the value of the gross product extracted during the previous calendar year.

In this case, the wording of the enactment brings into play a different time at which the operation of the privilege commenced. " * * * [T]here *is* levied a tax of two percent (2%) of the value of the gross product extracted *upon the privilege of severing or extracting* * * * " (emphasis added), § 39–6–302(g), together with, " * * * the payment shall be * * * based on the *actual production during the quarter* * * * " (emphasis added), § 39–6–304, W.S.1977, Cum.Supp.1981. The privilege was paid for in quarterly payments as it was exercised. Yet, the ultimate determinate of the amount of tax was measured on a *calendar* year basis. Confusion has resulted from the fact that at a time in the following year, the department is directed to audit and verify the fact of proper payments. Section 39–6–304(d), W.S.1977, Cum.Supp. 1981, provides in pertinent part:

"(d) On or before May 15 of each year beginning with the year 1982 * * * the department shall determine the amount of the gross production returned for the preceding calendar year, shall compute the amount of tax liability and shall credit the amount paid * * * and shall notify each taxpayer of the amount so determined and the balance or refund, if any, due."

Of course, the preceding calendar year is the one in which the privilege was exercised and during which the taxes were paid. That which is done in the subsequent year is only an auditing process. It is not an application of antecedent facts to measure the *currently* levied tax—as in *Belco*. The measure of the tax was made in the preceding year and paid immediately after each quarter of that year. Application of the foregoing quoted legal propositions as set

forth in Belco mandates imposition of the tax only for the time in which the privilege was exercised.

Inasmuch as the privilege taxed—the operation—began on March 1, 1981, the tax for the first quarter of 1981 should have applied only to the value of the gross product extracted during the month of March 1981. A tax should not be levied on a privilege already exercised and accomplished.

I would reverse and remand with directions to order the Commission to return to appellants the taxes paid pursuant to § 39–6–302(g) under protest for the months of January and February 1981.